**INTELLECTUAL PROPERTY DEVELOPMENT, INC.,**
Plaintiff–Appellee,

v.

**TCI CABLEVISION OF CALIFORNIA, INC., Defendant–Appellant.**

No. 00–1236.

United States Court of Appeals, Federal Circuit.

Decided May 7, 2001.

David Zaslowsky, and Robin L. Filion, Baker & McKenzie, of New York, NY, argued for plaintiff-appellee. On the brief were David Zaslowsky, and James David Jacobs. Of counsel was Frank M. Gasparo.

Scott F. Partridge, Baker Botts L.L.P., of Houston, Texas, argued for defendant-appellant. With him on the brief was Roger S. Donley. Also on the brief were Neil P. Sirota, of New York, NY; and David G. Willie, and Samir A. Bhavsar, of Dallas, TX.

Before LOURIE, SCHALL, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

TCI Cablevision of California, Inc. ("TCI–California") appeals the January 27, 2000 order of the United States District Court for the Central District of California, No. 99–CV–2982 (C.D.Cal. Jan. 27, 2000). The district court granted the motion filed by Intellectual Property Development, Inc. ("IPD") and Communications Patents Ltd. ("CPL") to dismiss its complaint against TCI–California with prejudice and to dismiss TCI–California's counterclaims without prejudice. We affirm.

## BACKGROUND

CPL, a United Kingdom limited company, is the assignee of United States Patent No. 4,135,202 ("the '202 patent"), which issued in 1979. The '202 patent covers certain wired broadcasting systems. CPL entered liquidation on May 12, 1993. On June 30, 1993, acting through a liquidator, CPL and IPD entered into an agreement that granted IPD numerous rights in the '202 patent.

The agreement accords IPD "an exclusive license, to make, use, and sell the inventions, the right to grant sublicenses, the right to collect monies, damages and/or royalties for past infringement and the right to bring legal action to collect the same." Further, the agreement provides:

[IPD] shall be entitled to take action under the ['202 patent] in [IPD's] own name to prevent infringement, or to collect damages for past infringement, or to defend proceedings for revocation in circumstances where [CPL] is not a necessary party to that action (a "Sole Ac-

tion") provided that.[IPD] notifies [CPL] in writing.... [IPD] shall keep [CPL] fully informed and consult with [CPL] about the conduct of the Sole Action. [IPD] shall not without the prior written consent of [CPL], which shall not be unreasonably withheld, settle or agree to any compromise.... In the event that [CPL] may be a necessary party to any litigation or legal action under the ['202 patent] (a "Joint Action") [IPD] shall not proceed with the Joint Action without the prior written consent of [CPL]. [CPL] reserves the right to withdraw consent to the Joint Action proceeding at any time up to termination of the Joint Action.... [IPD] further agrees to pay [CPL] fifty percent (50%) of the net profit of [IPD] derived from ... realisations [sic] realised [sic]: such as but not limited to litigation.

The rights CPL granted to IPD are subject to a nonexclusive license in the '202 patent that CPL previously granted to Cabletime Limited, Cabletime Systems Ltd., and their customers (collectively "Cabletime") on October 3, 1991. Additionally, the agreement provides that CPL maintains the right to "assign all [of its] rights and obligations" under the agreement and further allows CPL to prevent IPD from assigning its benefits under the agreement to a third party without prior written consent from CPL.

On September 1, 1994, IPD filed a suit against UA–Columbia Cablevision of Westchester, Inc. ("UA–Westchester") and Tele Communications, Inc. ("TCI") in the United States District Court for the Southern District of New York (the "New York case"). IPD asserted that UA Westchester and TCI infringed the '202 patent prior to its expiration on January 16, 1996. TCI is the parent company of both UA–Westchester and the appellant in the case at issue-TCI-California. On May 15, 1995, TCI filed a motion to dismiss the New

York case on the grounds that IPD lacked standing, or alternatively, because CPL was an indispensable party. Subsequently, by letter, CPL agreed to be bound by any judgment in the New York case. On September 8, 1995, the judge in the New York case determined that IPD maintained standing to bring the suit in its own name. A *Markman* hearing, construing the claims of the patent, was held in the New York case in June, 1997. *Intellectual Prop. Dev., Inc. v. UA–Columbia Cablevision of Westchester, Inc.*, No. 94–6296, 1998 WL 142346 (S.D.N.Y. Mar.26, 1998).

Prior to filing the suit at issue, IPD offered, and TCI declined to accept, an agreement to toll the damage limitation period for all TCI subsidiaries. Subsequently, IPD filed suit against twelve TCI subsidiaries (the "1999 cases"), alleging infringement of the '202 patent. This case is one of the twelve 1999 cases; it was filed in the United States District Court for the Central District of California on March 4, 1999. In this action, TCI–California counterclaimed, seeking declaratory judgment on the issues of noninfringement, invalidity, and unenforceability of the '202 patent.

On April 6, 1999, IPD filed a motion with the Judicial Panel for Multi-district Litigation ("JPML") to consolidate the 1999 cases and the New York case. On April 19, 1999, while the motion to consolidate was pending before the JPML, TCI–California moved to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or alternatively, based on IPD's failure to join an indispensable party-CPL-under Federal Rule of Civil Procedure 19(b). On May 26, 1999, the district court issued an order (the "May 26, 1999 order") in which it granted TCI California's motion to dismiss for "lack of standing." The court, however, delayed signing the order to allow IPD to amend its complaint to add

CPL as a party plaintiff and thereby rectify its "lack of standing." On May 28, 1999, TCI–California brought a motion for reconsideration of the May 26, 1999 order. Thereafter, IPD amended its complaint to add CPL as a party on June 21, 1999.

The district court, on June 28, 1999, denied TCI–California's motion for reconsideration and also clarified its May 26, 1999 order. The court stated that in the May 26, 1999 order, it had not held "that [IPD] lacked any element of constitutional standing so as to deprive the [c]ourt of jurisdiction over this case." It explained that "IPD made an adequate showing on the three elements required by the Constitution for standing to exist: a legally cognizable injury, a causal connection between the injury and the conduct and redressability of the injury." The court also indicated that it "found IPD to be an exclusive licensee that alleged a legally cognizable injury" and therefore noted that "[t]he [c]ourt's use of the words 'lack of standing' in the May 26 [, 1999] Order referred to a prudential limitation on IPD's right to bring suit without joining the patentee." That is, the court determined that the rights retained by the patent owner, CPL, are "of the type that make a patent owner who granted an exclusive license a necessary party to an infringement action brought by the licensee." Therefore, the court concluded by indicating that in its May 26, 1999 order it recognized that as an exclusive licensee, IPD did not have standing to sue in its own name and consequently the court required joinder of the patent owner, CPL.

On August 19, 1999, the JPML consolidated the 1999 cases and the New York case and transferred them to the United States District Court for the Central District of California, where this case was pending, for joint pretrial proceedings. IPD subsequently entered into tolling agreements with several TCI subsidiaries, which resulted in the stipulated dismissal of all of the 1999 cases other than the case at bar.[1]

IPD and CPL, on December 27, 1999, filed a motion to voluntarily dismiss this case with prejudice pursuant to Federal Rule of Civil Procedure 41(a) and to dismiss TCI–California's counterclaims for lack of subject matter jurisdiction. IPD and CPL attached a "Statement of Non Liability" to this motion, which provides: "[TCI–California] has no liability to CPL or IPD or any successors-in-interest to the '202 patent for infringement of the '202 patent and CPL and IPD and any successors-in-interest to the '202 patent will not sue [TCI–California] for infringement of the '202 patent." IPD and CPL further requested, in accordance with JPML Rule 7.6, that the district court suggest to the JPML that it remand the New York case to the United States District Court for the Southern District of New York.[2]

On January 27, 2000, the district court granted IPD and CPL's motion for voluntary dismissal, which effected the dismissal of its complaint with prejudice and the dismissal of TCI–California's counterclaims for lack of subject matter jurisdiction without prejudice. TCI–California appeals the district court's failure to dismiss the initial complaint-filed solely by IPD-for lack of standing and its subsequent grant of the motion for voluntary dismissal.

---

1. IPD and TCI–California did not enter into a tolling agreement.

2. On June 12, 2000, the district court granted IPD's request to suggest to the JPML that it remand the New York case to the United States District Court for the Southern District of New York.

## DISCUSSION

### A. Standard of Review

 Whether a party has standing to sue is a question of law that this court reviews de novo. *Prima Tek II L.L.C. v. A–Roo Co.*, 222 F.3d 1372, 1376, 55 USPQ2d 1742, 1745 (Fed.Cir.2000). The legal effect of an agreement transferring patent rights is an issue of law that we review de novo. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 873, 20 USPQ2d 1045, 1047 (Fed. Cir.1991).

### B. TCI–California's Standing to Appeal

IPD contends that TCI–California lacks standing to bring this appeal. It asserts that TCI–California was not aggrieved by the district court's grant of IPD and CPL's motion to dismiss this case. That is, IPD suggests that TCI–California seeks reversal of the district court's decision to grant IPD leave to add CPL as a party, and based on such a reversal, seeks dismissal of this case predicated on a theory that IPD lacked adequate standing to bring suit against TCI–California without having filed jointly with CPL. Therefore, IPD

contends that TCI–California seeks a judgment identical to the judgment effected by the district court's grant of the motion for voluntary dismissal, but for a different reason.[3]

 A party that receives all it has sought generally is not aggrieved by the judgment and cannot appeal from it.[4] *Deposit Guar. Nat.'l Bank v. Roper*, 445 U.S. 326, 333, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *Zenith Elecs. Corp. v. United States*, 875 F.2d 291, 293 (Fed.Cir.1989). The district court dismissed IPD and CPL's complaint alleging patent infringement with prejudice. TCI–California contends that this dismissal failed to redress fully its infringement liability concerns based on, *inter alia*, indemnity and direct liability to potential transferees of the patent rights.[5] TCI–California argues that it possesses these liability concerns because the district court's order failed to address the merits of TCI–California's counterclaims for declaratory judgment on the issues of invalidity and unenforceability. We determine that the district court's order dismissing the complaint with prejudice and TCI–California's counterclaims

---

3. A judgment vacating this decision and ordering the district court to dismiss this case for inadequate standing in the first instance, when IPD filed the suit alone, would require IPD and CPL to refile jointly a suit against TCI–California. The filing date of a patent infringement suit against TCI–California affects potential damages recovery. 35 U.S.C. § 286 (1994) ("[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.").

4. If this court determined, which it does not, that the district court should have dismissed this case in the first instance for lack of standing when the suit was brought by IPD alone, then that dismissal would likely have been without prejudice. *Textile Prods. Inc. v. Mead Corp.*, 134 F.3d 1481, 1486, 45 USPQ2d 1633, 1637 (Fed.Cir.1998). That is, IPD

could have subsequently jointly filed a suit against TCI–California with CPL. The district court's grant of the motion for voluntary dismissal filed by IPD and CPL effected a prejudicial dismissal with respect to infringement. Therefore, TCI–California seeks a judgment effectuating a non-prejudicial dismissal of the infringement claims against it rather than a prejudicial dismissal of those claims. While dismissal of a patent infringement suit without prejudice would generally be considered "worse" for a party that is an alleged patent infringer than dismissal of such claims with prejudice, circumstances such as the ones at issue fail to automatically divest this court of jurisdiction.

5. This case differs from *Penda Corp. v. United States*, 44 F.3d 967, 33 USPQ2d 1200 (Fed. Cir.1994), which concerned indirect third-party indemnity liability.

without prejudice fails to address fully all avenues of potential infringement liability. Therefore, TCI–California has standing to appeal the district court's dismissal of IPD and CPL's complaint with prejudice, its decision to allow IPD to amend its complaint to add CPL as a party plaintiff, and its dismissal without prejudice of TCI–California's counterclaims.

### C. Statement of Non–Liability

On January 27, 2000, the district court granted IPD and CPL's motion to voluntarily dismiss this case. This motion was filed pursuant to Federal Rule of Civil Procedure 41(a) and included a statement of non-liability. The court's order granting the motion for voluntary dismissal fails to state explicitly whether it granted the motion based on Rule 41(a) or based on the statement of non-liability.[6] A motion's substance rather than its linguistic form determines its nature and thus its legal effect. *Registration Control Sys., Inc. v. Compusystems, Inc.*, 922 F.2d 805, 808, 17 USPQ2d 1212, 1214 (Fed.Cir.1990); *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1057, 35 USPQ2d 1139, 1142 (Fed.Cir.1995) (determining that Federal Rule of Civil Procedure 41(a)(2), which the district court based its decision on, was inapplicable, but nevertheless determining that the trial court dismissed the case for lack of an actual controversy as required by Article III based on a statement of nonliability).

A declaratory judgment counterclaim may only be brought to resolve an "actual controversy." 28 U.S.C. § 2201(a) (1994). The actual controversy "must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). The burden rests on TCI–California in this case to establish "that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [counterclaim] was filed." *International Med. Prosthetics Research Assocs. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 575, 229 USPQ 278, 281 (Fed.Cir.1986).

In *Super Sack*, Super Sack sued Chase for allegedly infringing two of its patents. 57 F.3d at 1055, 35 USPQ2d at 1140. Chase denied infringement and filed a counterclaim seeking declaratory judgment on the issues of noninfringement and invalidity. Subsequently, in a motion to dismiss, Super Sack's counsel provided a statement indicating that "Super Sack will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." *Id.* at 1056, 35 USPQ2d at 1141. In *Super Sack*, this court first determined that the promise not to sue extended only to products that Chase made, used, or sold on or before July 8, 1994–the date that Super Sack filed its motion to dismiss. *Id.* at 1056–57, 35 USPQ2d at 1141.

The *Super Sack* court then recognized that in suits for declarations of patent rights, a two-part justiciability test applies:

There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2)

---

**6.** Federal Rule of Civil Procedure 41(a)(2) provides that if a counterclaim has been pled by a defendant prior to service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Fed.R.Civ.P. 41(a)(2). The record in this case fails to indicate whether the strictures of this rule were met in this case. Regardless, this case turns on the statement of non-liability, not on dismissal pursuant to Rule 41.

present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. *Id.* at 1058, 57 F.3d 1054, 35 USPQ2d at 1142 (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978, 28 USPQ2d 1124, 1126 (Fed.Cir.1993)).

The *Super Sack* court stated with respect to the patents at issue in the statement of non-liability, "Super Sack is forever estopped by its counsel's statement of non-liability ... from asserting liability against Chase in connection with any products that Chase made, sold, or used on or before July 8, 1994." *Id.* at 1059, 35 USPQ2d at 1143. It continued, providing: "This estoppel, in turn, removes from the field any controversy sufficiently actual to confer jurisdiction over this case." *Id.* Consequently, the court determined, "[b]ecause Chase can have no reasonable apprehension that it will face an infringement suit on [the patents at issue] with respect to past and present products, it fails to satisfy the first part of our two-part test of justiciability." *Id.*

The *Super Sack* court then addressed Chase's assertion that Super Sack's promise failed to cover products Chase could make, use, or sell in the future. *Id.* at 1059–60, 35 USPQ2d at 1143–44. The court pointed out that the second part of the declaratory justiciability test for patent rights requires that the putative infringer's "present activity" place it at risk of infringement liability. *Id.* at 1059, 35 USPQ2d at 1143. Because Chase's present activity failed to place it at risk of infringement liability, the court deter-

mined that "[t]he residual possibility of a future infringement suit based on Chase's future acts is simply too speculative a basis for jurisdiction over Chase's counterclaim of invalidity." *Id.* at 1060, 35 USPQ2d at 1144. Therefore, the *Super Sack* court affirmed the district court's grant of Super Sack's motion to dismiss for lack of jurisdiction with prejudice. *Id.*

Like the statement of counsel in *Super Sack*, the statement of non-liability filed by IPD and CPL estops IPD, CPL, and any successors in interest to the '202 patent from asserting liability against TCI–California for infringement of the '202 patent. Therefore, because TCI–California maintains no "reasonable apprehension" that it will face an infringement suit from IPD, CPL, or any successor in interest to the '202 patent, it fails to satisfy the first part of the justiciability test with respect to assertions of infringement by those parties.

TCI–California also contends that it could be required to indemnify an entity that potentially could be held liable in a different case for infringing the '202 patent. If TCI–California's interests are affected by a different suit regarding the '202 patent, then TCI–California should join that action as a party, for example, pursuant to Federal Rule of Civil Procedure 19(a)(2)(i).[7] Further, part one of the declaratory justiciability test for patent rights requires action by the patent owner that creates "reasonable apprehension" on the part of the declaratory plaintiff that it will face an infringement suit.[8] A suit filed against a different party, even if TCI–

**7.** Federal Rule of Civil Procedure 19(a)(2)(i) provides: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may [ ] as a

practical matter impair or impede the person's ability to protect that interest...."

**8.** We recognize that "apprehension" also may apply to a declaratory plaintiff's customers as discussed in *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 6 USPQ2d 1685 (Fed.Cir.1988).

California could potentially be required to indemnify that party, is not a suit that TCI–California itself faces. Therefore, the district court correctly determined that it lacked jurisdiction despite TCI–California's indemnity concerns.

In sum, similar to the resolution in *Super Sack*, the statement of non-liability divested the district court of Article III jurisdiction, and therefore the district court properly granted the motion to dismiss IPD and CPL's complaint with prejudice and TCI–California's counterclaims without prejudice.[9] *See also Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 19 USPQ2d 1545 (Fed.Cir.1991) (affirming the district court's dismissal of an action filed by Spectronics under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988), alleging, *inter alia*, invalidity and non-infringement of a patent owned by Fuller because Fuller filed a covenant not to sue Spectronics for infringement of the patent at issue and therefore Fuller was "forever estopped from asserting the [patent at issue] against Spectronics").

**D. IPD's Standing in the District Court**

While the district court correctly dismissed IPD and CPL's complaint with prejudice and TCI–California's counterclaims without prejudice, we possess jurisdiction to review the district court's decision to allow IPD to amend its complaint to add CPL as a party plaintiff.

**1. Rights Transferred from CPL to IPD**

A patent is "a bundle of rights which may be divided and assigned, or retained in whole or in part." *Vaupel*, 944 F.2d at 875, 20 USPQ2d at 1049. To determine whether a patent transfer agreement conveys all substantial rights under a patent to a transferee or fewer

than all of those rights, a court must assess the substance of the rights transferred and the intention of the parties involved. *Id.* at 874, 20 USPQ2d at 1048.

In making such a determination, it is helpful to consider rights retained by the grantor in addition to rights transferred to the grantee. *Id.* at 875, 20 USPQ2d at 1049. In the case at issue, under the CPL–IPD agreement, while IPD possesses an "exclusive license to make, use, and sell" the invention claimed in the '202 patent, CPL retains: (1) the right in certain circumstances (when CPL is a "necessary" party) to require IPD to obtain its consent to proceed with litigation (which can be withdrawn "at any time" until termination of the litigation); (2) the right in other circumstances (when CPL is not a "necessary" party) to be fully informed and to be consulted with regard to litigation; (3) the right to assign "all [of its] rights and obligations" under the agreement; (4) the right to prevent IPD from assigning its benefit under the agreement to a third party without prior written consent from CPL; (5) the right to require its consent to settlements (which shall not be "unreasonably withheld"); and (6) the right to collect fifty percent of profits realized from litigation.

This court has addressed the issue of whether an agreement transfers all or fewer than all substantial patent rights on several occasions. In *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 33 USPQ2d 1771 (Fed.Cir.1995), this court determined that a transfer of certain, but not all, patent rights from Diamedix to Abbott constituted an exclusive license of fewer than all substantial patent rights rather than an assignment of all such rights. In that case, Diamedix retained the right to make and use the products

**9.** It is of no consequence to the case at issue that *Super Sack* concerned a declaratory counterclaim for noninfringement and inval-

idity while TCI–California counterclaimed for declaratory judgment on the issues of noninfringement, invalidity, and unenforceability.

claimed in the patents for its own benefit and the right to sell those products to parties with whom Diamedix maintained pre-existing contracts and licenses. *Id.* at 1132, 33 USPQ2d at 1774. While Abbott was given the right of first refusal to sue alleged infringers, Diamedix retained the right to bring its own infringement actions. That is, although Abbott possessed the right to initiate suit for infringement, it could not "indulge" or permit an infringement, which the *Abbott* court indicated normally accompanies a complete conveyance of the right to sue. *Id.* Diamedix also retained the right to prevent Abbott from assigning its rights under the license to any party other than a successor in business. *Id.* at 1132, 33 USPQ2d at 1775. Finally, the *Abbott* court noted that it appeared that Diamedix retained the right to participate in a suit brought by Abbott because the agreement provided that Diamedix is "entitled to be represented therein by counsel of its own selection at its own expense." *Id.* at 1132, 33 USPQ2d at 1774. For these reasons, the *Abbott* court held that Abbott was granted fewer than all substantial rights under the patents. *Id.* at 1133, 33 USPQ2d at 1775.

Conversely, in *Vaupel,* this court determined that an agreement transferring certain patent rights from Markowsky to Vaupel constituted an assignment of all substantial rights in the patent at issue. 944 F.2d 870, 20 USPQ2d 1045. Markowsky retained: (1) a veto right on sublicensing by Vaupel; (2) the right to obtain patents on the invention in other countries; (3) a reversionary right to the patent in the event of bankruptcy or termination of production by Vaupel; and (4) a right to receive infringement damages. *Id.* at 875, 944 F.2d 870, 20 USPQ2d at 1049. The *Vaupel* court stated that it found "particu-

larly dispositive" the agreement provision that transferred the right to sue for infringement of the patent at issue subject only to the obligation to *inform* Markowsky. *Id.*

This court recently determined in *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245, 53 USPQ2d 1984 (Fed.Cir.2000), that an agreement transferring certain patent rights constituted an assignment of all substantial rights in the patents at issue. The agreement in *Speedplay* effected a transfer from Bryne and Zoumaras to Speedplay of the exclusive right to manufacture, have manufactured, distribute, market, use and sell products covered by the patents at issue. 211 F.3d at 1250, 53 USPQ2d at 1987. Bryne and Zoumaras, however, retained the option to initiate legal action against an alleged infringer in their own name, but only if Speedplay failed to bring such a suit within three months. *Id.* at 1251, 53 USPQ2d at 1987. Yet, the agreement at issue in *Speedplay* did not grant Bryne and Zoumaras the right to participate in an infringement action brought by Speedplay, nor did it limit Speedplay's management of any such action. *Id.* at 1251, 53 USPQ2d at 1988. This court determined that Bryne and Zoumaras's right to sue an infringer was illusory because Speedplay could render that right nugatory by granting the alleged infringer a royalty-free sublicense. *Id.* Indeed, the *Speedplay* court concluded, "Speedplay ... controls enforcement of [the patent at issue] for all practical purposes." *Id.* Finally, while Speedplay could not assign its interest without consent from Bryne and Zoumaras, the agreement provided that such consent "shall not be withheld unreasonably." The court deemed this provision not significantly restrictive of the scope of Speedplay's patent rights.[10] *Id.* at 1252,

---

**10.** Other rights retained by Bryne and Zoumaras in *Speedplay* are not relevant to the case at issue.

53 USPQ2d at 1988.

Guided by the aforementioned jurisprudence, we must assess the agreement at issue in this case, weighing the rights in the '202 patent transferred to IPD against those retained by CPL, to determine whether CPL assigned all substantial rights in the '202 patent to IPD or conveyed fewer than all such rights. The title of the agreement at issue, which uses the term "license" rather than the term "assignment," is not determinative of the nature of the rights transferred under the agreement; actual consideration of the rights transferred is the linchpin of such a determination. *See Speedplay*, 211 F.3d at 1250, 53 USPQ2d at 1986 ("A party that has been granted all substantial rights under the patent is considered the owner regardless of how the parties characterize the transaction that conveyed those rights.").

Under the agreement at issue, IPD is granted the right to "make, use, and sell" the invention claimed in the '202 patent. The agreement fails to suggest that CPL continues to possess similar rights as this court found salient in *Abbott*. While this right transferred to IPD is substantial, every other pertinent factor weighs in favor of finding that the agreement is an exclusive license of fewer than all substantial rights in the '202 patent.[11]

In both *Vaupel* and *Speedplay*, contrary to *Abbott*, the transferees effectively obtained the sole right to sue other parties for infringement. The right to sue in *Vaupel*, which was deemed "particularly dispositive," was only subject to an obligation to *inform* the transferor of any impending litigation. 944 F.2d at 875, 20 USPQ2d at 1049. In *Speedplay*, this court determined that the transferors' right to sue an infringer was illusory. 211 F.3d at 1251, 53 USPQ2d at 1988. Further, in *Mentor H/S, Inc. v. Medical Device Alliance*, 240 F.3d 1016, 1018, 57 USPQ2d 1819, 1820 (Fed.Cir.2001), this court deemed the transferee of patent rights to be an exclusive licensee of fewer than all substantial rights rather than an assignee of all of those rights in large part because the transferor retained the first opportunity to sue alleged infringers; that is, the transferee could only file such suits if the transferor failed to file a suit.

Pursuant to the agreement in the case at bar, CPL retains differing rights depending on whether it is a "necessary" party. The agreement fails to elucidate cogently the definition of "necessary." Yet, it suffices to recognize that in certain circumstances-when CPL is a "necessary" party-CPL must consent to litigation and can withdraw that consent at any time. That is, CPL can permit infringement when it is a "necessary" party, which is relevant to a finding that CPL granted IPD fewer than all substantial rights in the '202 patent. Indeed, a transferee that receives all substantial patent rights from a transferor would never need consent from the transferor to file suit because such an assignment essentially transfers title in the patent to the transferee. 35 U.S.C. § 100(d) (1994). Further, even if CPL is not a "necessary party" to a suit, IPD must keep CPL fully informed, and consult with CPL, as to any litigation pertaining to the patents at issue in the agreement.[12]

---

11. As discussed in *Vaupel*, CPL's right to receive infringement damages is "merely a means of compensation under the agreement." 944 F.2d at 875, 20 USPQ2d at 1049. We consider CPL's right to receive infringement damages a neutral factor.

12. While CPL must consent to settlement of a litigation by IPD, that consent cannot be "unreasonably withheld." In *Speedplay*, a consent requirement pertaining to assignment rights that could not be "unreasonably withheld" was deemed not significantly restrictive of the scope of Speedplay's patent rights.

CPL also retains the right to prevent IPD from assigning its benefits to a third party without first receiving CPL's consent. The *Abbott* court indicated that limits on a transferee's assignment rights weigh in favor of finding that an agreement constitutes a transfer of fewer than all substantial rights in a patent. 47 F.3d at 1132, 33 USPQ2d at 1775. Similarly, while the *Vaupel* court found that the agreement at issue in that case constituted an assignment of all substantial patent rights, it nevertheless recognized that a restriction on a transferee's right to assign is a substantial right reserved by the transferor. 944 F.2d at 875–76, 20 USPQ2d at 1049–50; *see also Prima Tek II,* 222 F.3d at 1380, 55 USPQ2d at 1748 ("A licensee's right to sub-license is an important consideration in evaluating whether a license agreement transfers all substantial rights."). We also recognize that limits on the assignment of rights are a factor weighing in favor of finding a transfer of fewer than all substantial rights in the '202 patent.

In light of CPL's right to permit infringement in certain cases, the requirement that CPL consent to certain actions and be consulted in others, and the limits on IPD's right to assign its interests in the '202 patent, we find that the CPL IPD agreement at issue transfers fewer than all substantial rights in the '202 patent from CPL to IPD.

2. Article III and Prudential Standing Requirements

 Standing in a patent infringement case is derived from the Patent Act, which provides: "A patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (1994). The term "patentee" comprises "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d) (1994).

 A grant of all substantial rights in a patent amounts to an assignment-that is, a transfer of title in the patent-which confers constitutional standing on the assignee to sue another for patent infringement in its own name. 35 U.S.C. § 261 (1994); *Waterman v. Mackenzie,* 138 U.S. 252, 256, 11 S.Ct. 334, 34 L.Ed. 923 (1891); *Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1030, 34 USPQ2d 1444, 1446 (Fed.Cir.1995). Conversely, a nonexclusive license or "bare" license-a covenant by the patent owner not to sue the licensee for making, using, or selling the patented invention and under which the patent owner reserves the right to grant similar licenses to other entities-confers no constitutional standing on the licensee under the Patent Act to bring suit or even to join a suit with the patentee because a nonexclusive (or "bare") licensee suffers no legal injury from infringement. *Ortho,* 52 F.3d at 1031, 34 USPQ2d at 1447; *Rite–Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1552, 35 USPQ2d 1065, 1074–75 (Fed.Cir.1995). It is clear that IPD is an exclusive licensee rather than a non-exclusive or "bare" licensee. An exclusive licensee receives more substantial rights in a patent than a nonexclusive licensee, but receives fewer rights than an assignee of all substantial patent rights. For example, an exclusive licensee could receive the exclusive right to practice an invention within a given limited territory. *Rite–Hite,* 56 F.3d at 1552, 35 USPQ2d at 1074 (citing *Independent Wireless Tel. Co. v. Radio Corp. of Am.,* 269 U.S. 459, 468–69, 46 S.Ct. 166, 70 L.Ed. 357 (1926)).

As stated earlier, IPD is an exclusive licensee that has some, but fewer than all, substantial rights in the '202 patent. Therefore, we find this factor to be neutral.

TCI–California argues that CPL should have been a required party to the district court suit at the outset of the litigation. That is, TCI–California contends that as an exclusive licensee having fewer than all substantial rights in the '202 patent, IPD lacked Article III standing to bring suit in its own name and could not create standing, and thus jurisdiction, by simply joining CPL rather than by dismissing the case and refiling jointly with CPL. Therefore, TCI California asserts that the district court judge improperly allowed IPD to amend its complaint to add CPL as a party plaintiff.

 TCI–California points out that the Supreme Court has stated: "The actual or threatened injury required by Article III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing....'" *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)). Because the Patent Act creates the sole remedy for infringement of a patent and because the Patent Act indicates that only "patentees" and "assignees" shall have a remedy for patent infringement, *see* 35 U.S.C. §§ 281 and 100(d), TCI California contends that, under *Warth,* only a "patentee" or an "assignee" (and not an "exclusive licensee" having fewer than all substantial patent rights) possesses Article III standing to bring a patent infringement suit. Further, TCI–California cites a footnote in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 571 n. 4, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), for the proposition that a constitutional standing defect cannot be cured by joinder. That is, TCI–California asserts that federal jurisdiction must exist at the time an action is filed.

 Article III standing requires a party invoking federal jurisdiction to establish three elements. *Lujan,* 504 U.S. at

560–61, 112 S.Ct. 2130. First, the plaintiff "must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of-the injury has to be 'fairly ... trace[able] to the challenged action of the defendant and not ... th[e] result [of] the independent action of some third party not before the court.'" *Id.* (citations omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (citation omitted).

TCI–California is correct in its assertion that Article III standing to sue in this case derives solely from the Patent Act. Section 281 of title 35 of the United States Code provides: "A patentee shall have remedy by civil action for infringement of his patent." A "patentee" includes "not only the patentee to whom the patent was issued but also the successors in title [assignees] to the patentee." 35 U.S.C. § 100(d). This statutory language, however, fails to limit Article III standing to patentees and assignees. As discussed above, IPD is an exclusive licensee having fewer than all substantial rights in the '202 patent. To determine whether IPD possesses constitutional standing, we must consider whether IPD meets each *Lujan* factor.

 A party such as IPD that has the right to exclude others from making, using, and selling an invention described in the claims of a patent is constitutionally injured by another entity that makes, uses, or sells the invention. Indeed, the Supreme Court has stated that a patent owner that grants "the exclusive right to make, use, or vend [a patented invention], which does not constitute a statutory as-

signment ... must allow the use of his name as plaintiff in any action brought by the licensee ... to obtain damages for the *injury to his exclusive right." Independent Wireless*, 269 U.S. at 469, 46 S.Ct. 166 (emphasis added).

Further, IPD's injury is directly related to the allegedly infringing conduct of TCI–California. This relationship meets the "fairly traceable" standard for causation described in *Lujan*. Finally, IPD's injury is redressable because, if successful in an infringement suit against TCI California, IPD could recover damages pursuant to 35 U.S.C. § 284 and could prohibit TCI–California from further making, using and selling its allegedly infringing products under 35 U.S.C. § 283. Indeed, this court has awarded damages to exclusive licensees as compensation for patent infringement injuries. *Weinar v. Rollform, Inc.*, 744 F.2d 797, 807–08, 223 USPQ 369, 374–75 (Fed. Cir.1984). In sum, IPD meets the three-pronged *Lujan* test for Article III standing.

■■■ Moreover, it was proper for IPD, as an exclusive licensee of fewer than all substantial rights in the '202 patent, to add CPL as a party plaintiff. The Supreme Court addressed the right to sue for patent infringement under a predecessor patent statute in *Independent Wireless*, a case involving an exclusive licensee (as distinguished from an assignee) that sought to obtain an injunction and damages against an alleged patent infringer without joining the patent owner to the suit. 269 U.S. at 466, 46 S.Ct. 166. The Court stated:

> The presence of the owner of the patent as a party is indispensable, not only to give jurisdiction under patent laws, but also in most cases to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one

action, or by satisfying one adverse decree to bar all subsequent actions.

*Id.* at 468, 46 S.Ct. 166.

The *Independent Wireless* Court recognized an exception to this rule in circumstances where a patent owner refuses, or is unable, to be joined as a co-plaintiff with an exclusive licensee. *Id.* In such cases, "the licensee may make [the patent owner] a party defendant by process [that is, involuntarily], and he will be lined up by the court in the party character he should assume." *Id.*

■■■ The *Independent Wireless* Court then explained that:

> [T]he owner of a patent, who grants to another the exclusive right to make, use, or vend the invention, which does not constitute a statutory assignment, holds title to the patent in trust for such licensee, to the extent that he must allow the use of his name as plaintiff in any action brought at the instance of the licensee in law or in equity to obtain damages for the injury to his exclusive right by an infringer, or to enjoin infringement of it.

*Id.* at 469, 46 S.Ct. 166.

■■■ As a general rule, in accordance with *Independent Wireless*, this court adheres to the principle that a patent owner should be joined, either voluntarily or involuntarily, in any patent infringement suit brought by an exclusive licensee having fewer than all substantial patent rights. *Prima Tek II*, 222 F.3d at 1377, 55 USPQ2d at 1746; *Abbott Labs.*, 47 F.3d at 1131, 33 USPQ2d at 1774; *Rite–Hite*, 56 F.3d at 1552, 35 USPQ2d at 1074; *Mentor H/S*, 240 F.3d at 1017, 57 USPQ2d at 1820; *Textile Prods.*, 134 F.3d at 1484, 45 USPQ2d at 1635. That is, unlike an assignee that may sue in its own name, an exclusive licensee having fewer than all substantial patent rights (that is not subject to an exception) that seeks to enforce

its rights in a patent generally must sue jointly with the patent owner. *Ortho*, 52 F.3d at 1030, 34 USPQ2d at 1447.

■■■ The general principle set forth in *Independent Wireless* requiring that a patent owner be joined, either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee having fewer than all substantial rights is prudential rather than constitutional. *Prima Tek II*, 222 F.3d at 1377, 55 USPQ2d at 1746. In addition to the three-prong Article III standing test delineated in *Lujan*, standing doctrine embraces judicially self-imposed limits, known as prudential limits, on the exercise of jurisdiction.[13] *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

■■■ As a prudential principle, an exclusive licensee having fewer than all substantial patent rights possesses standing under the Patent Act as long as it sues in the name of, and jointly with, the patent owner and meets the *Lujan* requirements. *Prima Tek II*, 222 F.3d at 1377, 55 USPQ2d at 1746; *Abbott*, 47 F.3d at 1131, 33 USPQ2d at 1774. This principle holds true except in extraordinary circumstances, such as where the infringer is the patentee and cannot sue itself. *Ortho*, 52 F.3d at 1030, 34 USPQ2d at 1447 (citing *Waterman*, 138 U.S. at 255, 11 S.Ct. 334).[14]

Indeed, the Supreme Court in *Independent Wireless* recognized that when an exclusive licensee files a patent infringement suit, "the presence of the owner of a patent as a party is indispensable ... to give jurisdiction under the patent laws...." 269 U.S. at 468, 46 S.Ct. 166.

3. IPD's Joinder of CPL

■■■ TCI–California argues that because IPD, an exclusive licensee having fewer than all substantial rights in the '202 patent, initially filed this suit in its own name, the district court lacked jurisdiction and therefore could not grant IPD leave to amend its complaint to add CPL as a party. However, this court has recognized the principle that a patent owner may be joined by an exclusive licensee. For example, in *Abbott*, an exclusive licensee having fewer than all substantial patent rights brought a patent infringement suit in its own name. 47 F.3d at 1129, 33 USPQ2d 1771. Thereafter, the patent owner filed a motion to intervene. *Id.* at 1130, 33 USPQ2d at 1773. This court determined that the patent owner's "joinder [was] required as a matter of statutory standing." *Id.* at 1133, 33 USPQ2d at 1775. Yet, the court did not dismiss the case for lack of jurisdiction and require that the patent owner and exclusive licensee jointly refile. Rather, the court reversed the district court's denial of the motion to intervene.[15] *Id.* at 1134, 33 USPQ2d at 1776.

---

13. For example, the Supreme Court has held that a "plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95 S.Ct. 2197. Additionally, even in circumstances where a plaintiff has alleged a constitutionally redressable injury, the Supreme Court has refrained from "adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances' ... most appropriately addressed in the representative branches." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Warth*, 422 U.S. at 499–500, 95 S.Ct. 2197). The

Supreme Court has also required a plaintiff's complaint to fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

14. It is noted that a patent owner's agreement to be bound by judgments cannot circumvent the rule of *Independent Wireless* that the patent owner must ordinarily be joined with an exclusive licensee in a patent infringement suit. *Prima Tek II*, 222 F.3d at 1380–81, 55 USPQ2d at 1748–49.

15. This court has indicated that even appellate-level amendments to correct jurisdiction-

TCI–California cites footnote four of the Supreme Court's *Lujan* decision for the proposition that a standing defect cannot be cured by joinder of a party to a suit. TCI California's reliance on this footnote is misplaced. In *Lujan*, the Supreme Court determined that the plaintiffs lacked constitutional standing because they failed to assert a sufficiently imminent injury and because their claimed injury was not redressable. *Id.* at 563–71, 112 S.Ct. 2130. As discussed above, IPD met the constitutional requirements for standing from the outset of its suit. Therefore, the cited portion of *Lujan* is inapposite.

### CONCLUSION

For the reasons set forth in this opinion, we affirm the district court's order, which effected dismissal of the complaint filed by IPD and CPL with prejudice and dismissal of TCI–California's counterclaims without prejudice.

*AFFIRMED.*

### COSTS

Each party shall bear its own costs.

---

al defects may be appropriate to allow an exclusive licensee to join the patent owner. *Mentor H/S,* 240 F.3d at 1019, 57 USPQ2d at 1821 (citing *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 836, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), for the proposition that "appellate-level amendments to correct jurisdictional defects" are appropriate under rare circumstances).