**TOSHIBA CORP., Plaintiffs,**

v.

**WISTRON CORP., Defendant.**

**No. SACV 10–00074 SVW (MLGx).**

United States District Court,
C.D. California.

Sept. 1, 2010.

tronics et al., (Docket No. 1657), and *Nokia Corp.*
*v. AU Optronics Corp.*, (Docket No. 1779).

Ahsan Ghazaly Imam, Irfan A. Lateef, Jon W. Gurka, Jonathan I. Detrixhe, Joseph S. Cianfrani, Joseph R. Re, Joshua J. Stowell, Knobbe Martens Olson & Bear LLP, Irvine, CA, Reza Mirzaie, Knobbe Martens Olson & Bear, Los Angeles, CA, John W. Holcomb, Knobbe Martens Olson and Bear LLP, Riverside, CA, Phillip Bennett, Knobbe Martens Olson & Bear LLP, San Diego, CA, for Plaintiffs.

Bryan J. Sinclair, Jeffrey M. Ratinoff, Karineh Khachatourian, K & L Gates LLP, Palo Alto, CA, Harold H. Davis, Jr., Howard Chen, Jas S. Dhillon, Michael J. Bettinger, Timothy P. Walker, K & L Gates LLP, San Francisco, CA, for Defendants.

ORDER FINDING LACK OF STANDING AND GRANTING TOSHIBA LEAVE TO AMEND TO FILE AN AMENDED COUNTERCLAIM FOR PATENT NOS. 5,410,713, 5,870,613, AND 5,903,-765 [67]

STEPHEN V. WILSON, District Judge.

## I. INTRODUCTION

Plaintiff, Toshiba Corporation ("Toshiba"), has filed a motion to dismiss the counterclaims of Defendant, Wistron Corporation ("Wistron"), based on patent numbers 5,410,-

713, 5,870,613, and 5,903,765. Plaintiff alleges that Wistron's failure to join Acer America Corporation ("Acer") and its affiliates as co-owners of the named patents requires the Court to dismiss the counterclaims for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II. FACTUAL BACKGROUND

The '713, '613, and '765 patents were developed in 1990 and were assigned to Acer in 1995. In 2001, Acer created Wistron as part of a spin off of its original design manufacturing business and assigned a co-ownership interest in the '713, '613, and '765 patents to Wistron in July 2008. Relying on this July 2008 agreement, Wistron asserts these named patents now without joining Acer.

### A. Overview of the July 2008 Patent Management Cooperation Agreement

The July 2008 agreement ("Agreement") makes Wistron and Acer "jointly the current assignees" of the patents at issue. As part of the Agreement, Wistron has the "sole discretion and exclusive right" to enforce the patents and exclusively control enforcement actions subject to a good faith consideration of Acer's interests. Additionally, Acer waives its right to object to being joined and agrees to be bound by a judgment in any suit initiated by Wistron. However, Acer is entitled to an equal share of any monetary recovery after Wistron's costs are reimbursed. Lateef Decl. Ex. B.

Both parties retain the non-exclusive right to make, sell and use the covered inventions under the Agreement. Wistron has the exclusive right to license the patents subject to Acer's interest to make, use and sell the covered inventions, but both parties would share in the royalties resulting from licensing equally to the extent the royalties exceed Wistron's costs. The Agreement's initial term was for two years, and it is automatically renewed for successive one-year terms provided neither party gives 30 days notice of termination prior to the renewal term. Lateef Decl. Ex. B. The agreement was recently renewed for another one year term and is currently in effect.

## III. DISCUSSION

### A. Controlling Law

Wistron argues that controlling precedent analyzing the joinder rule, Rule 19 of the Federal Rules of Civil Procedure, makes clear that co-owners such as Acer are not "necessary" nor "indispensable" parties to an infringement action. Wistron relies on the fact that Acer waived its rights to be joined and is bound to accept any judgment in a suit by Wistron under the Agreement. However, Wistron's heavy focus on case law analyzing Rule 19 without using substantive patent law to inform its analysis is misplaced.

■ Patent law on joinder of co-owners has long been a jurisdictional issue since before Rule 19. *Indep. Wireless Tel. Co. v. Radio Corp. Of Am.*, 269 U.S. 459, 468, 46 S.Ct. 166, 70 L.Ed. 357 (1926) (stating that requiring the presence of the patent owner serves two purposes—giving jurisdiction and preventing duplicative litigation). Even after the revision of Rule 19 in 1966, the Federal Circuit has consistently held that patent statutes govern when deciding who has the rights to assert a patent. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1337–38 (Fed.Cir. 2007) ("Where parties have contractually divided patent rights, we have analyzed standing to file the infringement suit under patent law principles."); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed.Cir.2001) ("As a prudential principle, an exclusive licensee having fewer than all substantial patent rights possesses standing under the Patent Act as long as it sues in the name of, and jointly with, the patent owner ..."); *Prima Tek II, LLC v. A–Roo Co.*, 222 F.3d 1372, 1376 (Fed.Cir. 2000) ("Standing to sue for patent infringement derives from the Patent Act ..."); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128 (Fed.Cir.1995) (applying principles from Supreme Court cases interpreting the Patent Act in determining who has rights to assert a patent).

■ Although procedural aspects of patent cases are typically controlled by the law of the circuit in which the case is filed, Federal Circuit precedent controls standing under

the Patent Act, as an issue unique to patent law. *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed.Cir.2002) ("On procedural issues, this Court follows the rule of the regional circuit, unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit."); *Bushnell, Inc. v. Brunton Co.*, 659 F.Supp.2d 1150, 1164 (D.Kan.2009) (applying Federal Circuit precedent in determining whether the plaintiff had standing to sue in a patent case despite the overarching question of subject matter jurisdiction).

## B. Prudential Standing Requirement Under the Patent Act

■ Standing for patent cases originates under the Patent Act, which provides that a "patentee" shall have a remedy to sue for infringement of a patent. 35 U.S.C. § 281 (2006). The definition of "patentee" includes the patentee's successors or assigns. 35 U.S.C. § 100(d) (2006).

■ In applying the Patent Act, courts have required that parties enforcing patents have constitutional and prudential standing. Constitutional standing, which is not contested in this case, essentially requires an ownership interest in the patent. Prudential standing, which Toshiba urges is lacking in this case, depends on the type and substance of the rights held by the party enforcing the patent as discussed below. *See, e.g., Isr. Bio–Engineering Project v. Amgen Inc.*, 475 F.3d 1256, 1264 (Fed.Cir.2007); *Prima Tek II*, 222 F.3d at 1377 (Fed.Cir.2000).

■ There are three rights an assignor may convey to another party that affect the party's ability to enforce the patent: (1) the whole patent, (2) an undivided part or share of that exclusive right, or (3) the exclusive right under the patent within and throughout a specified part of the United States. *Id.*; *Vaupel Textilmaschinen KG v. Meccanica Euro Italia, S.P.A.*, 944 F.2d 870, 873 (Fed. Cir.1991); *see also Waterman v. Mackenzie*,

138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923 (1891).

■ Under the second circumstance, where one co-owner possesses an undivided part of the entire patent jointly with other co-owners, the general rule is that the co-owner must join all the other co-owners to establish standing. *Enovys LLC v. Nextel Comm., Inc.*, 614 F.3d 1333, 1341 (Fed.Cir. 2010); *Amgen Inc.*, 475 F.3d at 1264; *Prima Tek II*, 222 F.3d at 1377; *Abbott Labs.*, 47 F.3d at 1131. The Federal Circuit has recognized one exception to this general rule—if the co-owner asserting the patent has been assigned "all substantial rights" of the patent, then the co-owner has standing to sue alone. *Prima Tek II*, 222 F.3d at 1377–78.

In this case, the parties are in agreement that Wistron and Acer are "joint owners" or "co-owners" of the '713, '613, and '765 patents. Toshiba Reply 1, Wistron Opp'n 20. Furthermore, as the July Agreement between Wistron and Acer states, Wistron and Acer both retain the right to make, use, or sell the covered inventions and both own the patents "jointly." Lateef Decl. Ex. B. Wistron argues that the rationale behind the general rule of joining co-owners—that the alleged infringer would be subject to multiple suits over the same claims—would not be served in this case. Although the court recognizes that the Agreement seems to limit the possibility of Acer bringing separate claims and reduces the risks sought to be avoided by Federal Circuit precedent, the law on the matter is sufficiently clear as discussed below in Part C.[1]

Wistron also argues that agreements such as the one at issue have excused the joinder of co-owners. However, the authority cited by Wistron, including *Rawlings v. National Molasses Co.* 394 F.2d 645, 647 (C.A.Cal.,1968), *Michaels of Oregon Co. v. Mil–Tech, Inc.*, No. 950908–MA, 1995 WL 852122 (D.Or.1995) and *IBM v. Conner Pe-*

---

1. The Court does not necessarily find that the policy behind the law is strongly reinforced when the law is applied in this case, although perhaps there is an argument that the risks for Toshiba in case of breach or non-renewal of the Agreement could still invoke the rationale behind the general rule. *See Moore U.S.A. Inc. v. Standard Regis-*

*ter Co.*, 60 F.Supp.2d 104, 109 (W.D.N.Y.,1999)(finding that the co-owner must be joined despite an agreement granting sole and exclusive right to sue to plaintiff because the agreement's expiration could subject defendant to suit).

*ripherals, Inc.,* 30 U.S.P.Q.2d 1315 (N.D.Cal. 1994) were all decided before the Federal Circuit precedent on standing discussed above was well-developed. Moreover, the Federal Circuit has held that a patent owner's agreement to be bound by judgments cannot circumvent the general rule that all co-owners be joined. *Intellectual Prop. Dev., Inc.,* 248 F.3d at 1348; *Propat,* 473 F.3d at 1192.

Thus, because Acer is a co-owner of the patent and Wistron has failed to join Acer, Wistron may only enforce the patents at issue on its own if the Agreement assigns "all substantial rights" to Wistron.

### C. "All Substantial Rights" Exception

■ If a party enforcing a patent has been given "all substantial rights" to the patent, it may assert the patent even without joining a co-owner. *Prima Tek II,* 222 F.3d at 1377–78. It is often helpful to consider the rights retained by the grantor in addition to the rights transferred to the grantee in determining whether agreements transfer "all substantial rights." *Intellectual Prop. Dev., Inc.,* 248 F.3d at 1342.

Though the Federal Circuit has never offered a complete list of the factors comprising "all substantial rights" of the patent, courts have acknowledged the importance of transferring several rights in determining whether "all substantial rights" were transferred. *See Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.,* 604 F.3d 1354, 1360–61 (Fed.Cir.2010) (stating that transferring exclusive right to make, sell, or use products under the patents is vitally important, transferring the right to enforce the patents is frequently most important, and acknowledging the importance of transferring the right to recover licensing royalties, control over activities, limits on the duration of the rights, and limits on assigning the patents); *accord AsymmetRx, Inc. v. Biocare Med., LLC,* 582 F.3d 1314, 1321 (Fed. Cir.2009) (requiring joinder of licensor where licensor retained right to make and use invention for limited purposes, required licensee to consider public interest in granting sub-licenses, imposed restrictions on sale of invention, and a retained share of royalties

from sub-licenses); *Abbott Labs.,* 47 F.3d at 1132–33 (requiring joinder of co-owner because the co-owner retained a limited right to make, use or sell the invention, to bring suit if the licensee refused, and to limit assignment to only successors in business); *Propat,* 473 F.3d at 1190–91 (requiring joinder of co-owner because co-owner retained implicit right to use invention, right to proceeds from litigation and licensing, ability to reasonably veto licensing and litigation decisions, and to limit assignment of rights).

■ In this case, though the rights granted to Wistron are significant, this Court agrees with Toshiba because Acer retained significant rights under the patent, preventing Wistron from acquiring all substantial rights.

Wistron argues that it has received all substantial rights to the patents because it has the right to make, use, or sell the covered inventions, the exclusive right to enforce the agreements, and complete control over any enforcement actions. Wistron distinguishes *Abbot labs* and *AsymmetRx* on the grounds that it has sole discretion in filing suit and in controlling the course of the litigation. Wistron also cites to *Vaupel,* 944 F.2d at 875, *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245, 1251 (Fed.Cir.2000), and other cases in support of the proposition that where a licensor has specifically disclaimed all interest in pursuing litigation related to the patent, one co-owner alone has standing to sue.

However, these arguments all overlook the fact that Wistron's agreement with Acer still allowed Acer the unfettered ability to practice the invention by making, using, and selling it. In both *Vaupel* and *Speedplay,* the licensor did not retain the complete and unrestricted right to practice the invention. *Speedplay,* 211 F.3d at 1250 ("[T]he grant to Speedplay consists of an 'exclusive worldwide, royalty-free, right and license under and to the Licensed Patents and the exclusive rights and license to manufacture, have manufactured, distribute, market, use and sell the Licensed Product and any other apparatus, instrument, device or product covered in whole or in part by the Licensed

Patents.' "); *Vaupel,* 944 F.2d at 875 ("The 1988 agreements thus purported to grant to Vaupel the exclusive right to make, use, and sell in the United States [the invention and methods at issue]."). In *Abbott,* the Federal Circuit distinguished *Vaupel,* highlighting the fact that unlike in *Vaupel,* where the license was exclusive, the agreement before the court allowed the licensor to make, use, and sell the invention to parties with whom it had pre-existing contracts. *Abbott Labs.,* 47 F.3d at 1132 ("Unlike in *Vaupel,* [the licensor] retained a limited right to make, use, and sell products embodying the patented inventions ...").

In addition to the right to make, use, or sell the covered invention, Acer retained the right to an equal share of royalties from Wistron's licensing efforts, has the right to not renew the Agreement upon 30 days notice, imposed the requirement that Wistorn may only assign its whole right in the patents, and required that Wistron act in good faith towards Acer's interests in enforcing the patents. Although retaining the rights to proceeds from royalties is not conclusive, it is consistent with the fact that Acer did not grant "all substantial" rights to Wistron. *See Propat Int'l.,* 473 F.3d at 1190–91. Additionally, restraints on the manner of conducting enforcement proceedings and on the transfer of patent rights have been viewed as preventing the transfer of all substantial rights by other courts. *See AsymmetRx, Inc.,* 582 F.3d at 1321–22; *Abbott Labs.,* 47 F.3d at 1132.

Finally, Acer retained the unilateral and absolute right to terminate the Agreement with Wistron. Therefore, it can regain the ability to enforce its patents with sufficient notice before the yearly renewal date. The Federal Circuit has found retaining this power is also consistent with the fact that the licensor retained a significant ownership interest in the patent. *Propat,* 473 F.3d at 1192.

Taking all of these factors as a whole, this court finds that the Agreement did not transfer "all substantial rights" to Wistron. Wistron therefore does not have standing to enforce the patent without joining Acer.

### D. Unreasonable Delay in Filing Motion To Dismiss

Wistron states that Toshiba knew or should have known as early as 2008 that Wistron was a co-owner of the patents. Thus, Wistron contends that Toshiba unreasonably delayed the filing of this motion. However, since standing is a subject matter jurisdiction issue as discussed above, it is entirely appropriate for Toshiba to raise the issue at this stage.

## IV. CONCLUSION

To cure its lack of standing, Wistron is given leave to file an amended counterclaim by September 13, 2010, as to its assertion of patent numbers 5,410,713, 5,870,613, and 5,903,765.

IT IS SO ORDERED.