# United States Court of Appeals for the Federal Circuit

05-1066

SICOM SYSTEMS LTD.,

Plaintiff-Appellant,

v.

AGILENT TECHNOLOGIES, INC.,

Defendant-Appellee,

and

TEKTRONIX, INC.,

Defendant-Appellee,

and

LECROY CORPORATION,

Defendant-Appellee.

Edward W. Goldstein, Goldstein & Faucett, LLP, of Houston, Texas, argued for plaintiff-appellant. With him on the brief was Corby R. Vowell.

James Galbraith, Kenyon & Kenyon, of New York, New York, argued for defendants-appellees. With him on the brief were Philip J. McCabe, of San Jose, California and Susan A. Smith, of Washington, DC. On the brief for Lecroy Corporation were Frank E. Scherkenbach, Fish & Richardson, of Boston, Massachusetts and Timothy Devlin, of Wilmington, Delaware; and Thomas H. Jenkins and Michael R. Kelly, Finnegan, Henderson, Farabow, Garrett & Dunner, of Washington, DC for Tektronix, Inc. Of counsel for Agilent Technologies, Inc. was John C. Vetter, Kenyon & Kenyon, of New York, New York.

Appealed from: United States District Court for the District of Delaware

Judge Joseph J. Farnan, Jr.

# United States Court of Appeals for the Federal Circuit

05-1066

SICOM SYSTEMS LTD.,

Plaintiff-Appellant,

v.

AGILENT TECHNOLOGIES, INC.,

Defendant-Appellee,

and

TEKTRONIX, INC.,

Defendant-Appellee,

and

LECROY CORPORATION,

Defendant-Appellee.

_____

DECIDED: October 18, 2005
_____

Before MAYER, RADER, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

Plaintiff-Appellant Sicom Systems Ltd. ("Sicom") appeals the dismissal of its infringement action against Agilent Technologies, Inc. ("Agilent"), Tektronix, Inc. ("Tektronix"), and LeCroy Corporation ("LeCroy") (collectively "Appellees") by the United States District Court for the District of Delaware. <u>Sicom Sys. v. Agilent Techs.</u>, No. 03-

1171-JJF (D. Del. Sept 30, 2004). On appeal, Sicom argues that the district court erred in concluding that Sicom did not qualify as an "effective patentee" and therefore lacked standing under the Patent Act to sue for infringement of U.S. Patent No. 5,333,147 ("the '147 patent") in this action. Because we hold that the assignor, "Her Majesty the Queen in Right of Canada as represented by the Minister of Defence, Canada" ("Canada"), did not convey all substantial rights in the patent to Sicom despite its conveyance to Sicom of the exclusive right to sue for commercial infringement, we affirm.

## I. BACKGROUND

The '147 patent, entitled "Automatic monitoring of digital communication channel conditions using eye patterns," claims a type of digital signal transmission channel monitor. The patent issued on July 26, 1994, and was assigned to Canada. On January 19, 1998, Sicom executed a license agreement, covering the '147 patent, with the Canadian government ("Agreement"). The inventors of the '147 patent are founding members of Sicom who developed the technology through their own research in connection with a contract with the Canadian government. Under the Agreement, Canada retained legal title to the '147 patent and reserved the rights to: (1) continue operating under the patented technology; (2) veto proposed sublicenses; (3) grant contracts to further develop the '147 patent; (4) sublicense any improvements or corrections developed by Sicom; and (5) sue for infringement of the '147 patent except for "commercial infringement actions." Additionally, Sicom could not assign its rights without Canada's approval, nor bring suit without first notifying Canada.

On January 15, 2003, Sicom filed its first action for infringement of the '147 patent against Agilent, LeCroy, and Tektronix. Canada declined to take part in the

litigation and Appellees jointly filed a motion to dismiss this first action on the ground that Sicom lacked standing to bring the suit. On November 20, 2003, the district court granted Appellees' first motion to dismiss, concluding that Canada had retained substantial rights to the patent to a degree sufficient to bar Sicom from commencing an action for infringement without the Canadian government. On December 18, 2003, Sicom appealed that decision to this court, but withdrew that appeal on January 1, 2004. Sicom Sys. v. Agilent Techs., 87 Fed. Appx. 174 (Fed. Cir. 2004).

On December 19, 2003, Sicom and the Canadian government executed an amendment to their Agreement ("the Amendment") granting Sicom the exclusive right to sue for commercial infringement of the '147 patent. Specifically, the Amendment granted to Sicom: (1) the exclusive right to "initiate commercial infringement actions" related to the patent; (2) an extension of the term of the Agreement to coincide with the term of the patent; and (3) an extension of Sicom's right to initiate commercial infringement actions after expiration of the patent. Sicom then filed a second suit on December 30, 2003 against Appellees, who subsequently filed a second motion to dismiss on February 20, 2004.

The district court issued an order granting Appellees' motion to dismiss on September 30, 2004, dismissing the case with prejudice and thereafter issued a Memorandum Opinion on October 5, 2004. Sicom Sys. v. Agilent Techs., No. 03-1171-JJF (D. Del. Oct. 5, 2004) ("Sicom"). In its opinion, the district court concluded that "Sicom does not possess the substantial rights necessary to be an 'effective patentee' for purposes of granting Sicom standing to sue for infringement of the '147 patent." Id., slip op. at 3-4.

The court was not persuaded that the Amendment granting Sicom "the exclusive right to sue for commercial infringement" of the '147 patent in the United States was sufficient to establish that Sicom had all of the substantial rights in the patent necessary to have standing in this suit. Id., slip op. at 4. "[T]his expansion of rights," according to the court, "does not grant Sicom the exclusive rights necessary to transform its license into an assignment." Id. "The qualifier of 'non-commercial infringement' contained in the Amendment coupled with the provisions of Article 11, cl. 2 of the Agreement, still give Canada the right to sue for any alleged infringement which is not commercial," id., and "Canada may still be able to pursue non-commercial customers of Defendants like governmental entities, the military and universities, thereby creating multiple risk of litigation over the same patent, a result which is inconsistent with a genuine exclusive right to sue." Id.

Additionally, the court noted that "the Amendment does not expressly grant Sicom the right to sue for past infringement, and the Amendment is only effective as of the date it was signed." Id. It noted that under Article 11, Clause (1) of the

Agreement,[1] "Sicom's right to sue is still limited despite the Amendment, in that Sicom (1) must notify Canada before bringing suit, (2) must consult with Canada for the

---

[1]     Article 11, Clause (1) reads:
In the event of any threatened or actual suit against the Licensee regarding an intellectual property infringement claim from any third party in

purpose of jointly determining the steps to be taken in the event of actual or threatened litigation, and (3) may not 'make any admission of liability, nor offer or conclude settlement' without the prior written consent of Canada." Id., slip op. at 5.

The court also based its holding that Sicom lacked standing on "the restriction on Sicom's right to assign," id., namely, "the Agreement's provision that Sicom cannot assign the '147 patent without the written consent of Canada," finding it to be a fatal reservation of the right by Canada. Id., slip op. at 6 (citing Article 2, Clause (9) of the Agreement).[2] It concluded that "[b]ecause Sicom's ability to assign the patent is restricted, Sicom's interest in the patent is limited to that of a licensee, and therefore, Sicom does not have standing to bring an infringement lawsuit." Id.

Finally, the court addressed the issue of whether the action should be dismissed with prejudice. It noted that "Sicom has not contested Defendants' assertion that any

---

consequence of the exercise of the right and licence granted herein or in the event of infringement of licensed rights by others:

(a)     the Licensee shall promptly inform the Licensor;
(b)     the Licensee shall not make any admission of liability nor offer or conclude a settlement regarding such claim without the prior written consent of the Licensor or as otherwise provided in Clause (2) of this ARTICLE;
(c)     the Parties will, for the purpose of jointly determining the steps to be taken in the circumstances, consult with each other and give to one another, free of charge, information or advice;
(d)     neither Party shall bind or commit the other Party to any course of action which involves liability for legal costs, expenses or damages unless jointly agreed upon in writing.

[2]     Article 2, Clause (9) reads:
Except as otherwise provided under this Agreement, the Licensee shall not, without the Licensor's prior express written consent, assign, delegate, sub-license, pledge or otherwise transfer this Agreement, or any rights or obligations under it, to any person.

dismissal by the Court of this action should be with prejudice, because Sicom has twice attempted and twice failed to establish standing." Id. The district court therefore granted Appellees' motion to dismiss the action with prejudice. Thereafter, Sicom appealed.

This court has jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

This court reviews jurisdictional questions, such as standing, de novo. Fieldturf Inc. v. Sw. Recreational Indus., Inc., 357 F.3d 1266, 1268 (Fed. Cir. 2004). "In determining whether a dismissal should have been with or without prejudice, this court applies the law of the pertinent regional circuit . . . ." H.R. Techs., Inc., v. Astechnologies, Inc., 275 F.3d 1378, 1383 (Fed. Cir. 2002). In the Third Circuit, dismissal with prejudice is reviewed under an abuse of discretion standard. Anderson v. Aylins, 396 F.3d 265, 271 (3rd Cir. 2005).

### B. Standing to Sue

#### 1.

The principal issue on appeal is whether the court erred in dismissing the case for lack of standing. Sicom argues that it had standing to sue for commercial infringement of the '147 patent under the Agreement and the Amendment and maintains that whether an agreement is titled a "license" rather than an "assignment" is not dispositive. Instead, it submits that "actual consideration of the rights transferred is the linchpin in determining standing." In this regard, Sicom argues that consideration of the rights transferred shows that Sicom holds all the substantial rights in the '147 patent,

and that therefore, this court should determine that it had standing to sue Appellees. Specifically, pointing to its exclusive right to sue commercial infringers, Sicom argues that "[t]he grant of the right to sue infringers is particularly dispositive of the question of whether a licensee holds all substantial rights because the ultimate question is whether the licensee can bring suit on its own or whether the licensor must be joined as a party."

In response, Appellees argue that the district court correctly held that Sicom did not have standing to sue for infringement of the '147 patent because Sicom is not the owner of the patent, the licensor of the patent, or the holder of all substantial rights of the patent. Instead, Appellees argue, Sicom is a mere licensee of the patent, where the licensor, Canada, retained the substantial rights to the patent. Appellees ask this court to affirm the district court's decision dismissing the action for lack of standing.

2.

Standing to sue is a threshold requirement in every federal action. Pfizer, Inc. v. Elan Pharms. Research Corp., 812 F. Supp. 1352, 1356 (D. Del. 1993). Standing must be present at the time the suit is brought. Procter & Gamble Co. v. Paragon Trade Brands, Inc., 917 F. Supp. 305, 309-10 (D. Del. 1995). The party bringing the action bears the burden of establishing that it has standing. Pfizer, 812 F. Supp. at 1356.

The Patent Act provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (2000). The term "patentee" comprises "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d) (2000). However, if the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee may be deemed the effective patentee under 35 U.S.C. § 281 for purposes of holding

constitutional standing to sue another for patent infringement in its own name. <u>Prima Tek II, L.L.C. v. A-Roo Co.</u>, 222 F.3d 1372, 1377 (Fed. Cir. 2000); <u>see also</u> 35 U.S.C. § 261 (2000); <u>Waterman v. Mackenzie</u>, 138 U.S. 252, 256 (1891); <u>Ortho Pharm. Corp. v. Genetics Inst., Inc.</u>, 52 F.3d 1026, 1030 (Fed. Cir. 1995).

Under 35 U.S.C. § 100, therefore, "[t]he owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot," <u>Calgon Corp. v. Nalco Chem. Co.</u>, 726 F. Supp. 983, 985 (D. Del. 1989), unless the licensee holds "all substantial rights" in the patent, <u>H.R. Techs.</u>, 275 F.3d at 1384.[3] A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement. <u>Rite-Hite Corp. v. Kelley Co., Inc.</u>, 56 F.3d 1538, 1552 (Fed. Cir. 1995); <u>Ortho</u>, 52 F.3d at 1031. An exclusive licensee receives more rights than a nonexclusive licensee, but fewer than an assignee. An example of an exclusive licensee is a licensee who receives the exclusive right to practice an invention but only within a given limited territory. <u>Rite-Hite</u>, 56 F.3d at 1552 (citing <u>Indep. Wireless Tel. Co. v. Radio Corp. of Am.</u>, 269 U.S. 459, 468-69 (1926)).

While a licensee normally does not have standing to sue without the joinder of the patentee (to prevent multiplicity of litigation), an exclusive license may be treated like an assignment for purposes of creating standing if it conveys to the licensee all substantial rights. <u>Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA</u>, 944 F.2d

---

[3] At least one exception exists where "an exclusive licensee that does not have all substantial rights does have standing to sue in his own name when 'necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself.'" <u>Textile Prod., Inc. v. Mead Corp.</u>, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (citations omitted).

870, 875 (Fed. Cir. 1991). This court has defined "all substantial rights" as those rights sufficient for the licensee or assignee to be "deemed the effective patentee under 35 U.S.C. § 281." Prima Tek II, 222 F.3d at 1377. Each license and assignment is unique, therefore this court "must ascertain the intention of the parties and examine the substance of what [the licensing agreement] granted" to determine if it conveys all of the substantial rights in the patent and is sufficient to grant standing to the licensee. Id. at 1358.

3.

This court has addressed the issue of whether an agreement transfers all or fewer than all substantial patent rights in five recent cases. See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333 (Fed. Cir. 2001); Prima Tek II, 222 F.3d 1372; Textile Prods., 134 F.3d 1481; Abbott Labs. v. Diamedix Corp., 47 F.3d 1128 (Fed. Cir. 1995); Vaupel, 944 F.2d 870; see also H.R. Techs., 275 F.3d 1378; Mentor H/S, Inc. v. Med. Device Alliance, 240 F.3d 1016 (Fed. Cir. 2001); Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245 (Fed. Cir. 2000).

In Intellectual Property, this court determined that Intellectual Property Development, Inc. ("IPD") was an exclusive licensee, not an assignee, having fewer than all substantial rights in the patent at issue. 248 F.3d at 1345. The court noted that the assignor, Communications Patents Ltd. ("CPL"), did not retain the right to "make, use, and sell" the invention, which it granted to IPD, but found that "every other pertinent factor weighs in favor of finding that the agreement is an exclusive license of fewer than all substantial rights in the '202 patent." Id. at 1344. Specifically, the court concluded that the agreement did not transfer the sole right to sue other parties for infringement to

IPD, because the agreement "suffices to recognize that in certain circumstances—when CPL is a 'necessary' party—CPL must consent to litigation and can withdraw that consent at any time." Id. The court additionally noted that "even if CPL is not a 'necessary party' to a suit, IPD must keep CPL fully informed, and consult with CPL, as to any litigation pertaining to the patents at issue in the agreement." Id. In Intellectual Property, the court also relied on the fact that CPL retained the right to prevent IPD from assigning its benefits to a third party, because "limits on the assignment of rights are a factor weighing in favor of finding a transfer of fewer than all substantial rights." Id.

In Prima Tek II, the patent owner, Southpac International, Inc., granted the licensee, Prima Tek I, "the exclusive, worldwide right to make, use and sell the products and processes covered by the patents, but only to the extent necessary to grant a license to Prima Tek II." 222 F.3d at 1374. This court determined that Prima Tek I lacked standing to sue for infringement without joinder of Southpac because the licensing agreement did not transfer all substantial rights in the patents, even though Prima Tek I had the sole and exclusive right to sue third parties for infringement and to collect damages for past infringements, and Southpac was bound by any judgment which may be rendered in any suit with respect to validity, infringement and enforceability. Id. at 1382. The court based its decision on the fact that "Prima Tek I's right to exclude was explicitly defined—and then extinguished—by the sub-license to Prima Tek II." This court therefore determined that the license had a very limited scope before the sub-license to Prima Tek II, which was to sub-license the patent, not to "exclude others from making, using and selling the patented inventions." Id. at 1380. After the sub-license, Prima-Tek I had "no right to exclude others from practicing the

patents because that right—to the extent that Prima Tek I ever possessed it—flowed to Prima Tek II." Id. The court concluded:

> Absent the right to exclude others from making, using and selling the patented inventions, Prima Tek I's asserted role as "effective patentee" is doubtful. We are further troubled by the fact that the agreement gives Prima Tek I virtually no control over the ability to sub-license the patents.

Id. Regarding the remaining sub-licensees, this court held that "[s]ince the remaining Appellees, Prima Tek II, HSC and HMSC, all derived their ownership interests in the patents from Prima Tek I, they too lacked standing to sue in the district court without being joined by the patent owner." Id. at 1382.

In Textile Products, this court affirmed the district court's dismissal for lack of standing. This court determined that the agreement transferred less than all substantial rights in the patent to the licensee, Textile Productions, Inc., because it did not clearly manifest a promise by the patent owner, Mead Corporation, to refrain from granting to anyone else a license in the area of exclusivity. 134 F.3d at 1485. This court found that the agreements at issue were "silent" as to the patent owner's ability to grant further licenses, and therefore, "this court must assume that Mead retained such rights." Id. Because "Mead retained the right to license third parties to manufacture the harness [the patented product] for their own use or for sale to others," this court held that it retained important rights to the patent, and did not transfer all substantial rights to Textile Productions, and therefore, Textile Productions did not have standing to sue for infringement. Id.

In Abbott Laboratories, this court determined that the transfer of certain patent rights to Abbott constituted an exclusive license of fewer than all substantial patent rights. In that case, Diamedix reserved the right to make and use the patented products

for its own benefit and the right to sell those products to parties with whom Diamedix had pre-existing contracts. 47 F.3d at 1132. Abbott was given the right of first refusal to sue alleged infringers; however, Diamedix retained the right to bring its own infringement actions, as well. Therefore, Abbott possessed the right to initiate suit for infringement, but it could not indulge an infringement, which is a right that this court found normally accompanies a complete conveyance of the right to sue. Id. In addition, Diamedix retained the right to veto any assignment by Abbott of its rights under the license to any party other than a successor in business. Id. This court lastly noted that Diamedix appeared to retain the right to participate in a suit brought by Abbott, as well, since the agreement in that case provided that Diamedix was "entitled to be represented therein by counsel of its own selection at its own expense." Id. Thus, this court held that Abbott was granted fewer than all substantial rights under the patents. Id. at 1133.

In contrast, in Vaupel this court determined that an agreement transferring certain patent rights to Vaupel constituted an assignment of all substantial rights in the patent. 944 F.2d 870. In that case, Markowsky retained a veto right on sublicensing by Vaupel, the right to obtain patents on the invention in other countries, a reversionary right to the patent in the event of bankruptcy or termination of production by Vaupel, and a right to receive infringement damages. Id. at 875. However, in Vaupel, this court found "particularly dispositive" the agreement provision that transferred the right to sue for infringement of the patent at issue subject only to the obligation to inform Markowsky. Id.

4.

In this case, we must assess the Agreement at issue, weighing the rights in the patent transferred to Sicom against those retained by Canada, to determine whether Canada assigned all substantial rights in the patent, or fewer than all such rights. Canada granted Sicom a license of the '147 patent under the Agreement. Sicom is a "sole" licensee, which the Agreement defines as having "the right to be the only licensee" of the patent. However, Canada has reserved for itself the right to continue operating under the patented technology, as well as a multitude of other rights, including: the right to veto Sicom's reassignment of its rights or proposed sublicenses; the right to levy additional royalties or other consideration; the right to grant contracts and sub-contracts to further develop the invention claimed in the patent; and the right to offer sublicenses under any improvements or corrections developed by Sicom. See Calgon, 726 F. Supp. at 988 (stating that "[j]ust as the right to alienate personal property is an essential indicia of ownership, the right to further assign patent rights is implicit in any true assignment"); see also Intellectual Prop., 248 F.3d at 1345; Pfizer, 812 F. Supp. at 1373. Indeed, Canada also retained the right to sue for infringement other than commercial infringement and it retained legal title to the patent.

We agree with Sicom that an important substantial right is the exclusive right to sue for patent infringement. Calgon, 726 F. Supp. at 986. This right is substantial because the right to sue is the means by which the patentee exercises "the right to exclude others from making, using, and selling the claimed invention." Vaupel, 944 F.2d at 875.

Although Sicom does have an exclusive right to sue for commercial infringement under the Agreement and the Amendment, it is also true that a single infringer could be

vulnerable to multiple suits for any non-commercial infringement. The scope of Sicom's right to sue is limited to "initiating commercial infringement actions." Therefore, Sicom's exclusive right to sue for "commercial" infringement does not signify that Sicom has the exclusive right to sue for all infringement. Indeed, Canada specifically retains the right to sue for "non-commercial" infringement. Similarly, Sicom does not have the ability to indulge infringement outside of the "commercial" sphere. See Abbott Labs., 47 F.3d at 1132 (noting that the licensee "does not enjoy the right to indulge infringements, which normally accompanies a complete conveyance of the right to sue").

We find unpersuasive Sicom's response that it is not suing Appellees' customers, nor suing for non-commercial infringement, and that this court should not consider risks that are outside the scope of the facts in this case. Sicom's focus on the parties in suit is misplaced where this court has established that the intention of the parties to the Agreement and the substance of what was granted are relevant factors in determining whether all substantial rights in a patent were conveyed. See Prima Tek II, 222 F.3d at 1378. Additionally, we find that Sicom, in other respects as well, has failed to show that it has all substantial rights under the patent. For instance, Sicom does not have the right to settle litigation without the prior written consent from Canada, nor does Sicom have the right to sublicense without Canada's prior approval or to assign its rights. See Intellectual Prop., 248 F.3d at 1345; Abbott Labs., 47 F.3d at 1132; Pfizer, 812 F. Supp. at 1373 (finding that without a right to assign, the court "need look no further in determining that [the licensor] reserved substantial rights under the Agreement"). As the district court found, "the restriction on Sicom's right to assign" was a "fatal reservation of rights by Canada." Sicom, slip op. at 5.

Moreover, Canada made further reservations. Under the Agreement, it reserves the rights to: grant contracts and sub-contracts to develop the '147 patent further; offer sublicenses under any improvements or corrections that Sicom develops; veto any sublicense; and levy additional royalties or other consideration. See Prima Tek II, 222 F.3d at 1380 (noting that the right to sublicense is an important consideration in determining whether a license agreement transfers all substantial rights). Finally, Canada specifically retained legal title to the '147 patent under the Agreement, which states that "[t]itle to all rights of ownership in the Licensed Intellectual Property are and shall remain with the Licensor."

In light of Canada's right to permit infringement in certain cases, the requirement that Sicom consent to certain actions and be consulted in others, and the limits on Sicom's right to assign its interests in the patent, we hold that the Agreement transfers fewer than all substantial rights in the patent from Canada to Sicom. See Calgon, 726 F. Supp. at 986. Accordingly, we affirm the district court's order dismissing Sicom's complaint. We stress the principle set forth in Independent Wireless requiring that a patent owner be joined in any infringement suit brought by an exclusive licensee having fewer than all substantial rights. 269 U.S. 459; see also Prima Tek II, 222 F.3d at 1377; Textile Prods., 134 F.3d at 1484; Rite-Hite, 56 F.3d at 1552; Abbott Labs., 47 F.3d at 1131. Unlike an assignee who may sue in its own name, an exclusive licensee having fewer than all substantial patent rights and seeking to enforce its rights in a patent generally must sue jointly with the patent owner. Ortho, 52 F.3d at 1030. Thus, Sicom does not have standing to sue alone without joinder of Canada under the Patent Act. Calgon, 726 F. Supp. at 985 ("[T]he patent holder or assignee is a necessary party to an

infringement action in order to achieve consistency of interpretation and to avoid multiplicity of litigation.  Under federal law, the patentee is the real party in interest in such litigation.").

## C.  Dismissal with Prejudice

On appeal, Sicom additionally argues that the district court abused its discretion in dismissing the case with prejudice.  Sicom points out that "[d]ismissal for lack of standing is usually without prejudice."  Sicom submits that dismissal with prejudice is inappropriate here because Sicom is able to cure any defect in its standing "through negotiations with the Canadian government."

In response, Appellees point out that Sicom failed to "raise this argument in the district court, despite an opportunity to do so."  Appellees therefore argue that "Sicom's failure to raise this argument in the district court constitutes a waiver of that argument on appeal."  They argue that "Sicom should not be permitted to obtain yet another minor amendment to its license and bring yet another lawsuit."

We conclude that the district court did not abuse its discretion by dismissing this case with prejudice.  First, as the district court noted, this action was Sicom's second suit that was dismissed for lack of standing.  Second, as the district court noted, "Sicom has not contested Defendants' assertion that any dismissal by the Court of this action should be with prejudice, because Sicom has twice attempted and twice failed to establish standing."  Sicom, slip op. at 6.  Although Sicom correctly argues that dismissal with prejudice is generally inappropriate where the standing defect can be cured, Sicom already had a chance to cure the defect and failed.  See Textile Prods.,

134 F.3d at 1485. Accordingly, we affirm, holding that the district court was within its discretion to dismiss the case with prejudice.

## CONCLUSION

We affirm the district court's order granting Appellees' motion to dismiss and dismissing the case with prejudice.

## AFFIRMED