**Brian X. SCOTT, pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 07–216C.

United States Court of Federal Claims.

Aug. 23, 2007.

Brian X. Scott, Colorado Springs, CO, pro se.

Meredyth D. Cohen, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. LTC Frank A. March, U.S. Army Legal Services, of counsel.

## MEMORANDUM OPINION AND ORDER

CHRISTINE O.C. MILLER, Judge.

This case is before the court after argument and supplemental briefing on defendant's motion to dismiss. Plaintiff has protested a solicitation for Reconstruction Support Security Services in Iraq as a violation of the Anti–Pinkerton Act, 5 U.S.C. § 3108 (2000), and 48 C.F.R. (FAR) § 37.109 (2006). Defendant challenges plaintiff's qualifications as an "interested party" with standing to maintain this protest, even with all allegedly illegal provisions removed. These provisions that defendant agrees to sanitize for purposes of its motion involve acquisition of the services of private security contractors in Iraq.

### FACTS

Brian X. Scott ("plaintiff") protests Request for Proposal No. W91GXZ–07–R–0004, issued by the Department of the Army, United States Army Corps of Engineers—Gulf Region Division, for Reconstruction Security Support Services in Iraq (the "Solicitation"), issued January 19, 2007. Plaintiff "does not seek any money as damages," and "does not ask the court to issue an injunction prior to rendering of a final decision," but, rather, requests a ruling that "the Agency acted in contravention of U.S. Law." Compl. filed Apr. 3, 2007, ¶¶ 2, 3, 19. Plaintiff further requests that "the Court . . . order the Agency to reverse its illegal action . . . [and, if] services are still required to resolicit for those services." *Id.* ¶ 20.

The Solicitation is an Indefinite Delivery/Indefinite Quantity Contract for the provision of continued operation of Reconstruction Operations Centers, personal security services to and from project worksites, guard force services for facilities and personnel, Reconstruction Liaison Teams, a Vetting Program for local hiring, and Anti–Terrorist Force Protection Services. AR 518. The minimum guaranteed amount under the contract is $3 million, and the maximum amount is not to exceed $475 million for the base-option periods. AR 68. Following release of the solicitation, four amendments were issued on February 15, 2007; February 21, 2007; February 24, 2007; and March 13, 2007. AR 218, 221, 506, 626. The closing date for submission of proposals, as amended, was March 3, 2007. AR 220. Plaintiff did not submit a proposal in response to the Solicitation.

Plaintiff filed a protest with the Government Accountability Office (the "GAO") on March 2, 2007, one day prior to the closing date for submission of proposals, challenging the Solicitation by levying the same protests as he makes in this action. He sought from the GAO a directive to the Department of the Army to modify the Solicitation in order to comply with the requirements of the Anti–Pinkerton Act. The GAO issued Decision B–299524 on March 6, 2007, dismissing his protest, taking the position that, "[w]e have previously considered similar protests by Mr. Scott of solicitations for protective services in Iraq, and have concluded that the services are not precluded by the Anti–Pinkerton Act." *Brian X. Scott,* b–299524, Mar. 6, 2007, 2007 CPD ¶ —— (citing *Brian X. Scott,* B–298370, B–298490, Aug. 18, 2006, 2006 CPD ¶ 125, 2006 WL 2390513).

Subsequently, on April 3, 2007, plaintiff filed his complaint for permanent injunctive relief in the United States Court of Federal Claims. Plaintiff finds unlawful the terms of the Solicitation insofar as they require the use of "quasi-military armed services," contrary to the requirements of the Anti–Pinkerton Act, 5 U.S.C. § 3108, and FAR 37.109. Compl. ¶ 6. Defendant moved to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction, arguing that plaintiff

lacks standing to maintain this bid protest because plaintiff does not demonstrate that he is an "interested party," within the meaning of 28 U.S.C. § 1491(b)(1) (2000) (granting jurisdiction to the Court of Federal Claims "to render judgment on an action by an interested party objecting to a solicitation").[1]

## DISCUSSION

### 1. *Standard of review*

As a threshold matter, in every federal case, a plaintiff must establish standing in order to invoke the court's jurisdiction. *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed.Cir.2005); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed.Cir.2002). "The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To invoke subject matter jurisdiction, the party's standing must be established by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). "Because standing is jurisdictional," a court finding that plaintiff has failed to carry his burden of establishing standing "precludes a ruling on the merits." *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed.Cir.2003).

The Court of Federal Claims has jurisdiction over challenges to government procurement pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1) (2000). In 1996 Congress clarified the bid protest jurisdiction of the Court of Federal Claims when it passed the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, § 12(a), 110 Stat. 3870, 3874–75 (codified at 28 U.S.C. § 1491(b)) (the "ADRA"), which provides:

> Both the Unite[d] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2000).

The Federal Circuit considered the meaning of the ADRA's revised jurisdictional grant in *American Federation of Government Employees, AFL–CIO v. United States*, 258 F.3d 1294 (Fed.Cir.2001) ("*AFGE* "), concluding that Congress intended that the term "interested party" of section 1491(b)(1) be construed "in accordance with the [Competition in Contracting Act,]" 31 U.S.C. § 3551(2)(A) (2000) (the "CICA"). *AFGE*, 258 F.3d at 1302.

The CICA defines "[t]he term 'interested party', with respect to a contract or a solicitation or other request for offers ... [as] an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A) (2000); *see also Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir.2006); *Myers*, 275 F.3d at 1370; *AFGE*, 258 F.3d at 1302 (holding that the legislative history of the ADRA "suggests that Congress intended standing under the statute to be limited to disappointed bidders"). Accordingly, as a threshold matter, a party must establish standing by showing he is an "interested party" that (1) is an " 'actual or prospective bidder[ ] or offeror[;]' " and (2) has " 'direct economic interest ... affected by the award of the contract or by failure to award the contract.' " *Rex Serv. Corp.*, 448

---

1. As a result of a mistaken certificate of service on defendant's response brief, plaintiff on August 13, 2007, submitted Plaintiff's Request To Deny Defendant's Motion To Dismiss Based on Official Misconduct, Including Contempt of Court and Perjury, which was forwarded to chambers under cover of a Memorandum stating that no provision in the court's rules allows for the filing of this item. The court notes defendant's repeated failure to correctly serve plaintiff, but, as plaintiff also received defendant's response by facsimile transmission, plaintiff was not prejudiced by defendant's mistake. The Clerk of the Court shall return this item unfiled.

F.3d at 1307 (quoting *AFGE*, 258 F.3d at 1302).

### 2. *Direct economic interest*

The focus of defendant's argument is that plaintiff has not established that he is an "interested party" because he cannot show that he has a "substantial chance of being awarded this contract, even absent the allegedly illegal provisions in the [Solicitation]." Def.'s Br. filed June 4, 2007, at 7 (redacted). Defendant relies on *Myers* in support of the statement that "[d]irect economic interest is deemed to be affected only where the protestor establishes that it had a 'substantial chance' of securing the award absent a prejudicial defect in the process." *Id.* (citing *Myers*, 275 F.3d at 1370). Even if those services that are objected to by plaintiff were eliminated from the Solicitation, defendant asserts that plaintiff still would be unable to perform the remaining requirements of the contract due to his financial status and lack of demonstrated experience. Defendant relies upon plaintiff's affidavit dated April 19, 2007, which "described his financial and manpower resources and his previous Government contracting experience." Def.'s Br. filed June 4, 2007, at 8 (redacted); *see* Affidavit of Brian X. Scott, Apr. 19, 2007, at 4–9.

Plaintiff responds by citing to *Red River Service Corp. v. United States*, 60 Fed.Cl. 532, 539 (2004), for the proposition that the "substantial chance" test is inapplicable to pre-award bid protest actions. In *Red River* Judge Braden distinguished between standing to protest at the "pre-award juncture" and after a contract is awarded. *Id.*

However, the Federal Circuit has not articulated any difference in standing for protests initiated pre-award versus post-award.[2] The governing precedent thus requires plaintiff to establish that he is an interested party by demonstrating that he is an actual or prospective bidder with a direct economic interest in the procurement. To prove direct economic interest, the burden is plaintiff's to establish that he was prejudiced by showing that he "had a 'substantial chance' of receiving the contract." *Rex Serv. Corp.*, 448 F.3d at 1308.

To establish the requisite standing as an interested party, a plaintiff in a pre-award bid protest considering submission of a proposal to a government solicitation could demonstrate a substantial chance of receiving award through discussion of financial wherewithal, technical and/or other necessary specialized expertise, and prior experience in contracting on similar projects. Even at a pre-award stage, the court is able to ascertain that, in a case such as this, which involves a specialized contract for security services and a potential expenditure of up to $475 million, only certain parties with established relationships, expertise, and experience in this field could qualify as a having a "substantial chance" of contract award.

For purposes of argument on the issue of plaintiff's standing, defendant gathered specific information on the scope of the Solicitation absent the putatively illegal provisions.[3] Margaret A. Jones, Program Man-

---

**2.** The Federal Circuit's recent decision in *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed.Cir.2007), reinforces the use of the same standing standard in both contexts. The Federal Circuit held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Id.*, at 1313. Thus, a protest challenging the terms of a government solicitation containing a patent error may never be waged post-award, because the opportunity to object to such an error ends upon the close of the bidding process and, necessarily, prior to any award being made. It follows that the standard enunciated in *AFGE* for standing applies with equal force to the pre-award challenge to the terms of a solicitation containing a patent error. No new information can be gained on the discrete issue of standing in waiting for an award to be made. *Cf. Red River*, 60 Fed.Cl. at 539 (declining to apply "substantial chance" test to pre-award context because "[w]ithout at least some of this information [about other offerors and their *bona fides* ], a plaintiff would have no idea whether its offer would be within the 'zone of active consideration.'" (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed.Cir.1996))).

**3.** While plaintiff for the first time in his opposition to defendant's motion to dismiss sought for "the Army [to] break this huge mother contract into two or more smaller daughter contracts," Pl.'s Br. filed June 20, 2007, at 4, he withdraws this argument in his later supplemental brief.

ager and Source Selection Evaluation Board Chairperson for the Solicitation, posits in her affidavit a hypothetical Solicitation without the allegedly illegal provisions consistent with plaintiff's description of remaining services. The remaining Solicitation provisions include the following services:

1. *Operation of the Reconstruction Operation Centers*
2. *Reconstruction Liaison Team*
3. *Vetting Services*
4. *Anti-terrorism/Force Protection Services*
5. *Safety Health Officer*
6. *Driver Trainer*

Affidavit of Margaret A. Jones, July 26, 2007, at 1. Ms. Jones concludes that the remaining Solicitation provisions call for approximately 275 employees, many with specialized skills and experience and a security clearance, and would cost the contractor approximately $38.5 million over a twelve month duration.

In his affidavit plaintiff states that he possesses resources on hand, which include $50,000.00 in liquid assets and more than $350,000.00 in available equity in his home. He represents that he has "established a relationship with the local office of Booz Allen Hamilton. Though we have never worked a deal together in the past, they are extremely interested in teaming with me if I can deliver the sort of security and returns that Aegis has had on the previous/current RSSS contract." Affidavit of Brian Xavier Scott, Apr. 19, 2007, at 4. Plaintiff states that "[t]hey would be willing to provide any amount of operating capital needed to per-

form whatever portion of this effort that I would offer to them on a subcontract or in some other teaming arrangement." *Id.* Plaintiff also lists eleven other businesses, mostly small businesses, with which he was partnered in Colorado, Utah, and Arizona in the past three months that "have extended me credit, and I paid them after I got paid by my Federal government customer." *Id.* at 5. In addition, plaintiff lists nine subcontractors and teaming partners with whom he is dealing under proposals for other government contracts that are within the competitive range of offers. He states that these companies and persons have extended to him over $600,000.00 in credit for the proposals now under review. Also, plaintiff lists two teaming partners with which he is developing proposals that are not yet submitted, which he states are willing to extend over $1 million in credit for those proposals in development. *Id.* at 5. Finally, he states:

> I believe that [ ] contracting offices have made determinations that making Advance Payments as authorized in FAR 32.3 and 32.4 are appropriate in the business environment in Iraq.
>
> Although I believe that these financing arrangements are intended mostly to help small businesses perform government contracts, it is my understanding that federal agencies in Iraq have even made advance payments to large businesses.

*Id.* at 6. Plaintiff concludes by noting that "[a] 15% advance payment would cover almost all of my needs for operating capital." *Id.* To date, despite the court's ordering

---

*See* Pl.'s Br. filed Aug. 17, 2007, at 4 ("I am not asking or demanding that the legal portions be broken up into several daughter contracts[.]"). Nonetheless, such a position on standing would not be entertained by this court. It is within the Army's discretion to choose how to structure its solicitations and which portions to bundle together. *See ABF Freight Sys., Inc. v. United States,* 55 Fed.Cl. 392, 409 n. 13 (2003) ("The law is well-settled that the determination of an agency's procurement needs and the best method for accommodating them are matters primarily with the agency's discretion."); *XTRA Lease, Inc. v. United States,* 50 Fed.Cl. 612, 625 (2001) ("The determination of an agency's minimum needs is a matter within the broad discretion of agency officials. It is not the duty of the court to second guess such determinations." (citation omitted)).

That restructuring the Solicitation as it stands into any unspecified number of "smaller daughter contracts" would enable plaintiff to then "bid on the contract or contracts for other services," Pl.'s Br. filed June 20, 2007, at 4, is irrelevant to whether plaintiff has standing to challenge the instant Solicitation. Given the posture of this case, the court will not substitute its judgment for that of the agency's determination as to its "procurement needs and best methods for accommodating them." *ABF Freight Sys.,* 55 Fed. Cl. at 409 n. 13 (2003). The court therefore evaluates plaintiff's standing as an interested party by considering whether plaintiff has a substantial chance of receiving the contract for the Solicitation absent the allegedly illegal provisions.

plaintiff to substantiate the support that any putative partner would commit to an offer, plaintiff has been unable to procure a sworn statement from any potential teaming partner which could provide the necessary operating capital for the Solicitation at hand. *See* Pl.'s Br. filed Aug. 17, 2007, at 8.

Plaintiff's showing does not establish that he has a substantial chance of contract award, even if the allegedly illegal provisions are removed from the Solicitation. The Solicitation involves a complex undertaking, requiring expertise in operation in a foreign locale thousands of miles distant from the United States; specific types of equipment and personnel; and an ability to finance much of the startup costs without the benefit of an advance payment, which was not authorized by the Solicitation. Plaintiff does not adduce any history of experience completing any of the required tasks in the Solicitation, nor does he show that he has the ability effectively to finance this endeavor. At present he is performing two contracts, which he values at $140,000.00 and $27,000.00, for domestic work that involves furnishing of PC technicians and site-improvement installments, including a shade structure and fence. *See* Scott Aff. at 8. These activities do not correspond with the Solicitation's requirements. Plaintiff possesses $50,000.00 in savings, as well as approximately $350,000 in equity available in his home and makes a vague assertion that Booz Allen Hamilton's office is willing to extend "unlimited" credit to him. *See id.* at 4. Plaintiff has failed to substantiate this assertion with any documentation that a teaming partner relationship exists. Plaintiff also does not satisfy his burden by showing any established relationships with specialized personnel necessary to fulfill the requirements of the Solicitation; indeed, he states that he "do[es] not currently have any W–2 employees on my payroll full-time." *Id.* at 7.

Plaintiff's experience with work on small-scale domestic projects providing for minor construction and information technology services does not demonstrate that he had a substantial chance of contract award, particularly when compared to some of the more-recognized organizations experienced in this line of work that actually submitted bids for the Solicitation. *See* AR 625. These factors, taking into consideration plaintiff's status as a pre-award protestor, make it apparent that plaintiff has not made a sufficient showing that he has a substantial chance of contract award.

Even assuming, *arguendo*, that plaintiff could establish his financial wherewithal, technical and/or other necessary specialized expertise, and prior experience in contracting on similar projects suited to the Solicitation, plaintiff nonetheless would be unable to establish that he had a substantial chance of contract award. Because plaintiff did not submit a bid prior to the close of the period for submission of proposals, even if he could prevail on his challenge to the terms of the solicitation and the court were to order a reevaluation of the proposals with the allegedly illegal provisions removed, plaintiff would have no chance of securing award of the contract, as he has formulated it. *Rex Serv. Corp.*, 448 F.3d at 1308 (holding that plaintiff-protestor alleging violations in solicitation process did not have "substantial chance" of receiving contract because plaintiff never bid on contract prior to close of solicitation); *see also AFGE*, 258 F.3d at 1302 ("Congress intended standing under the [ADRA] to be limited to disappointed bidders.")

Plaintiff does not qualify as an interested party with standing under the ADRA because he does not establish a substantial chance of award and thus does not show a direct economic interest in the award or failure to award the contract. Nonetheless, in the interest of giving full consideration to the issue of standing, the court examines the issue of plaintiff's status as an actual or prospective bidder.

### 3. *Actual or prospective bidder*

Assuming, *arguendo*, that plaintiff is correct in arguing that the "substantial chance" test should not be applied in pre-award bid protest actions, defendant also moves for dismissal on the basis that plaintiff does not meet the definition of "interested party" because plaintiff is not an "actual or prospec-

tive bidder or offeror." *See* Def.'s Br. filed July 10, 2007, at 6–7.

The closing date of submissions for the Solicitation was March 3, 2007, and plaintiff did not submit a proposal in response to the Solicitation. Plaintiff was not an actual bidder because he did not submit a proposal in response to the Solicitation. In *Rex Service Corp.* the Federal Circuit clarified the meaning of the phrase "prospective bidder or offeror:"

> Rex did not bid, and, therefore, it is not an "actual bidder." It argues, however, that it is a "prospective bidder," because, *inter alia,* it filed an agency protest prior to the close of bidding, and it was prejudiced, but not prevented from bidding, by alleged violations in the department's solicitation. These arguments are to no avail.

> *MCI* held that "in order to be eligible to protest, one who has not actually submitted an offer must be *expecting* to submit an offer prior to the closing date of the solicitation." [*MCI Telecomm. Corp. v. U.S.*], 878 F.2d [362] at 365 [(Fed.Cir. 1989)] (emphasis in original). Further, "the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends." *Id.* Here, because Rex could have bid, but chose not to, it cannot be considered a prospective bidder.

448 F.3d at 1307–08. Plaintiff also represents that he intended to submit a proposal for the Solicitation, but "[s]ince I refuse to bid on contracts for mercenary services, I would not bid on the larger daughter contract." Pl.'s Br. filed June 20, 2007, at 4. Plaintiff, therefore, does not qualify as a prospective bidder, as he did not submit an offer prior to the closing date of the Solicitation. By failing to submit a proposal to the unexpurgated Solicitation prior to the closing date, although he could have, plaintiff does not demonstrate that he is an actual or prospective bidder or offeror, and lacks standing to pursue his protest.

## CONCLUSION

Accordingly, based on the foregoing, the Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

