PROST, Circuit Judge,
dissenting.
The majority holds that, in a bankruptcy proceeding, separating the title to a patent from the right to sue for infringement extinguishes all standing to enforce the patent. Because I believe the General Unsecured Creditors’ Liquidating Trust of At Home Corporation (“GUCLT”) holds a sufficient bundle of rights to support co-plaintiff standing with the holder of legal title, I respectfully dissent.
Pursuant to the liquidation plan, three entities divided the interests and assets of the At Home Corporation (“AHC”). The At Home Liquidating Trust of At Home Corporation (“AHLT”) received all assets of AHC, including the patent at issue in this case. Two additional trusts represent the unsecured creditors to AHC: the Bond Holders’ Liquidating Trust of At Home Corporation (“BHLT”) and the GUCLT. BHLT received the rights to causes of action against AHC’s controlling shareholders; GUCLT received the rights to pursue all other causes of action — including infringement of intellectual property, including U.S. Patent No. 6,122,647 (“the patent”). As the liquidation plan stated, AHLT exists to manage the assets for the benefit of GUCLT and BHLT. Indeed, AHLT requires their consent to sell or otherwise dispose of the patent.
I agree with the majority insofar as it holds that GUCLT does not have standing to enforce the patent in its own name; it is not, as the majority describes, in the “first category” of plaintiffs — patentees and holders of all substantial rights. But the analysis does not end there. As it is apparent that AHLT, having assigned the right to sue, cannot enforce the patent alone, the only way to enforce the patent requires AHLT and GUCLT to act as co-plaintiffs. The majority opinion forecloses that option.
Plaintiffs in the majority’s “second category” hold fewer than all substantial rights in the patent, and therefore may not sue in their name alone. They may still enforce the patent, but must do so in the paten-tee’s name and may compel the patentee to join as a necessary party. Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1347-48 (Fed.Cir.2001). Further, as this court recognized in Evident Corp. v. Church & Dwight Co., a defendant’s counterclaims may bring the patentee into a case and provide the original “second category” plaintiff with the support required for standing. 399 F.3d 1310, 1314 (Fed.Cir.2005). While I agree that Evident may only apply to the “second category” of plaintiffs, I believe the majority errs by excluding GUCLT from that category.
If, as I would hold, GUCLT is properly considered a “category two” plaintiff, then *1345 it could have added AHLT to the suit either voluntarily or involuntarily to satisfy our prudential standing requirements. See Intellectual Prop. Dev., 248 F.3d at 1347-48. GUCLT had no need to add AHLT, however, because Microsoft’s counterclaims here brought AHLT into the case, thus satisfying our prudential requirements. Evident, 399 F.3d at 1314. While I accept the usefulness of the majority’s attempt to clearly delineate our jurisprudence on standing, that attempt misses the mark by failing to correctly define the second category of plaintiffs.
The majority narrowly defines the second category without any reasoned basis. It describes “exclusionary rights and interests” as “created by the patent statutes,” but does not elucidate why only patentees and exclusive licensees should enjoy such rights. Maj. op. at 1340. Indeed, the precedent cited seems to contradict the majority’s strict categorizations. In Intellectual Property Development, this court extensively discussed the underpinnings of our standing requirements. In that case, we stated, “Article III standing to sue in [patent cases] derives solely from the Patent Act_This statutory language, however, fails to limit Article III standing to patentees and assignees.” Intellectual Prop. Dev., 248 F.3d at 1346. Thus, our precedent clearly shows that while protect-able legal interests may derive from the patent statutes, those statutes do not limit standing to patentees — thus allowing standing for the majority’s “second category” of plaintiffs.
While the majority effectively treats the second category as occupied solely by exclusive licensees, that category may properly include other types of plaintiffs. In Intellectual Property Development, 248 F.3d at 1346, we clarified that determining standing of non-patentee parties requires analysis under the standard set forth in Lujan v. Defenders of Wildlife, 504 U.S. 556, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Specifically, a putative plaintiff must demonstrate (1) an injury in fact (invasion of a legal interest that is concrete and particularized, and actual or imminent injury); (2) a causal connection between the defendant’s action and the injury; and (3) that it is likely a favorable decision would redress the injury. Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130. No serious argument could contend that GUCLT does not satisfy the second two factors; thus— as the majority ostensibly recognizes — the key question regarding constitutional standing is whether or not GUCLT suffers an injury in fact from Microsoft’s infringement. Rather than meaningfully evaluating the injury to the plaintiff here, the majority simply falls back on the established boundary including exclusive licensees.
Looking at injury in fact as arising from a breach of exclusionary rights under the patent, the majority equates exclusionary rights with the right to practice and right to license. Maj. op. at 1341-42. Exclusive licensees have the right to enforce a patent because that is the only way to give meaning to their exclusivity. Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 469, 46 S.Ct. 166, 70 L.Ed. 357 (1926). Although exclusionary rights are important to an exclusive license, it does not follow that only exclusive licensees (and patentees) may hold those rights. While Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A recognized that an exclusive license includes exclusionary rights, it concerned the difference between an exclusive license and an assignment. 944 F.2d 870, 874 (Fed.Cir.1991). Vaupel does not stand for the proposition that a party requires an exclusive license to gain exclusionary rights.
The majority further looks to Sicom Systems, Ltd. v. Agilent Technologies, Inc. *1346 for the proposition that control over litigation is insufficient to confer standing for a non-patentee. 427 F.3d 971 (Fed.Cir.2005). Several problems cloud the comparison. First, the only issue in Sicom was whether or not the putative plaintiff could sue in its name alone, without adding the holder of legal title. Id. at 975. That is not the question here. Further, Sicom had the right to sue only for commercial infringement, leaving open a broad range of potential non-commercial infringers. Id. at 979. Under such an arrangement, “a single infringer could be vulnerable to multiple suits for any noncommercial infringement.” Id. That is not the ease here.
Focusing much attention on the right to grant licenses under the patent here, the majority concludes that without such a right, GUCLT is missing a key component of the so-called exclusionary rights necessary for standing.[1] If, as the majority states, AHLT could freely and exclusively license the target of GUCLT’s litigation, it would eviscerate GUCLT’s right to sue. None of the documents defining the outcome of bankruptcy, however, explicitly address the right to license the patent. A nonexclusive license is a covenant not to sue, Ortho Pharm. Corp. v. Genetics Inst., Inc., 52 F.3d 1026, 1032 (Fed.Cir.1995), so separating the right to sue from the right to license without any basis in the parties’ arrangement makes a distinction without a solid basis. Because the two concepts are so intertwined, I would recognize that the right to sue — explicitly assigned to GUCLT — includes the right to offer nonexclusive licenses to targets of litigation.
Moreover, any right that AHLT has regarding transfer of rights under the patent is subject to consent by GUCLT. Nothing in the Trust Agreement indicates that GUCLT cannot unreasonably withhold such consent, an omission that sharply contrasts with the requirement that AHLT consent to settlement of suit by GUCLT and not unreasonably withhold such consent. The arrangement clearly places less restriction on GUCLT and demonstrates that GUCLT is the party controlling litigation, including settlement of the litigation through licensing.
The majority looks to Speedplay, Inc. v. Bebop, Inc. as indicating that a requirement for consent by the grantor of rights does not restrict the rights granted. 211 F.3d 1245 (Fed.Cir.2000). But that case concerned a grantor reserving the right of consent — not to be unreasonably withheld — to ensure the economic value of the consideration it received. Id. at 1251-52. Here, without the requirement for reasonableness, GUCLT’s consent more substantially restricts AHLT. The consent provision should ensure that AHLT cannot — as the majority would have it — negate GUCLT’s right to sue by granting licenses.
Speedplay also stated that the only reasonable basis to withhold consent is when giving consent would harm the economic value of the patent. Id. Even if — contrary to the plain language here — GUCLT were required not to unreasonably withhold consent, if AHLT were to offer a license to a target of GUCLT’s litigation against GUCLT’s wishes, it would be reasonable under Speedplay for GUCLT to withhold consent. I believe, therefore, that whatever right to license the patent AHLT may *1347 hold, it does not interfere with GUCLT’s right to enforce the patent.
The bankruptcy agreements also provide that GUCLT requires AHLT’s consent pri- or to settling any litigation, not to be unreasonably withheld. Under Speedplay, the requirement that AHLT not unreasonably withhold such consent indicates a more limited impact on GUCLT’s right to control litigation and enforce the patent. Moreover, while the majority recognizes that AHLT must “fully and promptly cooperate” with GUCLT’s litigation efforts, it fails to give any meaningful weight to that requirement. Indeed, if AHLT must fully cooperate with GUCLT, then AHLT must exercise its rights in the patent consistent with GUCLT’s litigation goals. That includes refraining from licensing the targets of litigation unless GUCLT desired a license as part of a settlement deal. At such time, AHLT must cooperate by consenting to the settlement and offering a license as GUCLT directs.
The majority also places great emphasis on Propat International Corp. v. RPost, Inc., believing it to control this case. 473 F.3d 1187 (Fed.Cir.2007). I disagree. In Propat, the plaintiff required the patent owner’s permission in order to select litigation targets, Id. at 1194; here, GUCLT does not require AHLT’s permission. I believe the selection of targets forms a major portion of the right to enforce a patent, and provides an important basis for distinguishing this case from Propat.
Further, the holder of title in Propat retained an economic interest in the patent; here, AHLT does not retain an economic interest where it holds title to the patent in trust for GUCLT and BHLT. Finally, in Propat this court viewed the right to transfer one’s interest as an important indicium of a true ownership interest. Id. Here, we have no indication that GUCLT cannot freely assign its rights under the bankruptcy agreement. In almost every way, its rights exceed those of the bare licensee in Propat. In light of GUCLT’s substantially greater interest here, I cannot agree that it does not hold a proprietary interest in the patent. Assigned the right to enforce the patent, GUCLT suffers an injury when a party infringes the patent and thus satisfies the Lujan standards for standing.
I would hold that GUCLT does suffer an injury in fact. First, GUCLT holds an equitable interest in the title to the patent as beneficiary to the AHLT. I agree with the majority that ownership of equitable title to a patent does not by itself provide sufficient interest to sustain standing to sue alone for damages. See Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1579 (Fed.Cir.1991). In Arachnid, however, the plaintiff wanted the court to impose a triist extending prior to the date on which a district court awarded ownership to the plaintiff. Id.
GUCLT’s equitable ownership in the patent should play a relevant role in the analysis. Exclusive licensees have standing to sue in the patent owner’s name in part because the patent owner holds title to the patent in trust for the exclusive licensee, as the majority admits. Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 469, 46 S.Ct. 166, 70 L.Ed. 357 (1926). Here, AHLT explicitly holds the title in trust for GUCLT and BHLT, providing stronger reason to consider injury to the interests of the beneficiaries. Infringement of the patent diminishes its value and directly reduces the benefit enjoyed by GUCLT. While the majority states that we cannot know what assets will flow to GUCLT from AHLT, that does not change the fact that GUCLT and BHLT are the sole beneficiaries of AHLT. Any harm to the value of AHLT’s assets directly affects GUCLT, causing an injury in fact.
*1348 Moreover, GUCLT’s interest does not stop with its equitable interest in title to the patent; it also received the explicit right to sue as part of the bankruptcy agreement. While the majority points to precedent disallowing standing based on right to sue clauses in license agreements, those cases do not dictate the result here. For example, in Prima Tek II, L.L.C. v. A-Roo Co. this court held that a right to sue clause in a license agreement cannot allow standing by the licensee alone. 222 F.3d 1372, 1381 (Fed.Cir.2000). I find Prima Tek II inapposite where GUCLT— as a “category two” plaintiff — has no need to support standing in its own name.
In Ortho, this court also concluded that a right to sue clause cannot provide a nonexclusive licensee with standing. 52 F.3d at 1034. The court, however, based its holding in part on the details of the case— Ortho wanted standing to pursue a second case against an infringer that had already lost a suit by the patentee. Id. at 1035. Here, the agreement plainly assigns the entire right to sue Microsoft to GUCLT, who in the present case would litigate next to the holder of legal title to the patent, AHLT. Such a situation presents none of the difficulties that arose in Ortho.
Supported by no precedent clearly on point, the majority chooses to close the door on GUCLT enforcing the patent with AHLT as a co-plaintiff. I would follow the opposite course, particularly in light of the various policy considerations that guide the courts on standing. Indeed, this case does not' implicate the perils associated with a relaxed standing requirement — that multiple plaintiffs may subject a defendant to suit for the same conduct, or that the patentee may miss an opportunity to defend against invalidation. Evident, 399 F.3d at 1314; see also Ortho, 52 F.3d at 1031 (quoting A.L. Smith Iron Co. v. Dickson, 141 F.2d 3, 6 (2d Cir.1944)). On the contrary, the bankruptcy agreement here clearly specifies the actions that GUCLT may pursue, separating a small number of defendants subject to suit only by BHLT. Allowing co-plaintiff standing for GUCLT and AHLT would create no risk of multiple suits and would permit AHLT to ensure a full defense of the patent’s validity. Devoid of policy considerations, the majority opinion merely concludes that GUCLT lacks exclusionary rights. As explained, because the indicia of standing point the other way, I believe GUCLT does hold such an interest. Where GUCLT has received the right to enforce the patent and the patentee presently holds title in trust for GUCLT, infringement of the patent constitutes injury in fact.
While I do not read any precedent as directly governing the peculiar circumstances of this case, I also do not read any as precluding co-plaintiff standing for GUCLT. I believe that, in denying all possibility for enforcing the patent, the majority opinion extends limitations on co-plaintiff standing without a reasoned basis. Accordingly, while neither GUCLT nor AHLT individually may pursue infringement litigation, I would not deprive the patent of all value. Because I would allow GUCLT and AHLT, as co-plaintiffs, standing to sue Microsoft, I respectfully dissent.

. The majority's extensive reliance on GUCLT’s inability to license the patent rests entirely on the district court’s interpretation of the parties' agreements. As the majority notes, that issue is the subject of an appeal currently pending before the Ninth Circuit. An unsettled issue playing such a central role in the present case demands independent analysis, which the majority opinion lacks.