NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RASMUSSEN INSTRUMENTS, LLC,**
*Plaintiff-Cross-Appellant*

**v.**

**DEPUY SYNTHES PRODUCTS, INC., DEPUY SYNTHES SALES, INC.,**
*Defendants-Appellants*

**MEDICAL DEVICE BUSINESS SERVICES, INC.,**
*Defendant-Appellee*

---

2023-1855, 2023-2399, 2023-1856, 2024-1047

---

Appeals from the United States District Court for the District of Massachusetts in No. 1:20-cv-11807-TSH, Judge Timothy S. Hillman.

---

Decided: October 6, 2025

---

KURT LOUIS GLITZENSTEIN, Fish & Richardson P.C., Boston, MA, argued for plaintiff-cross-appellant. Also represented by NITIKA GUPTA FIORELLA, Wilmington, DE.

GREGORY A. CASTANIAS, Jones Day, Washington, DC, argued for defendants-appellants and defendant-appellee.

Also represented by TRACY A. STITT; CALVIN GRIFFITH, THOMAS KOGLMAN, PATRICK NORTON, Cleveland, OH; CHRISTOPHER MORRISON, Boston, MA.

———————————

Before HUGHES, LINN, and CUNNINGHAM, *Circuit Judges.*

HUGHES, *Circuit Judge.*

This appeal arises from a patent infringement action in the United States District Court for the District of Massachusetts. Following trial, a jury found that DePuy infringed U.S. Patent No. 9,492,180 but did not infringe U.S. Patent No. 10,517,583. The district court granted in part and denied in part subsequent motions for judgment as a matter of law, for a new trial, and for various remedies and entered final judgment consistent with the verdict.[1] DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc. appeal both the final judgment of infringement of the '180 patent and the denial of its motion for judgment as a matter of law on the issue of patent ownership, as well as the grant of Rasmussen Instruments, LLC's motions for various remedies; Rasmussen Instruments, LLC cross-appeals, challenging the final judgment of non-infringement of the '583 patent. Because we conclude that Rasmussen Instruments, LLC lacked standing because it did not own either patent at the time it filed suit, we vacate the district court's final judgment and remand for the district court to dismiss this action for lack of jurisdiction.

———————————

[1] The district court granted defendant's motion for judgment as a matter of law only as to the dismissal of one of the defendants and denied all other claims. *See Rasmussen Instruments, LLC v. DePuy Synthes Prods., Inc.*, No. CV 20-11807-TSH, 2023 WL 2711072, at *4 (D. Mass. Mar. 30, 2023).

## I

In October 2020, Rasmussen Instruments, LLC brought claims of infringement of two patents, U.S. Patent Nos. 9,492,180 and 10,517,583, against DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc. (collectively, DePuy) in the United States District Court for the District of Massachusetts. Both patents are directed to instruments used during surgical installation of a knee replacement implant. Both patents list Dr. G. Lynn Rasmussen,[2] an orthopedic surgeon, as the inventor.

In 1992, Dr. Rasmussen developed an instrument for use during orthopedic surgery procedures. He called the tool created based on his designs the "Zen Instrument." Dr. Rasmussen filed a provisional patent application on the Zen Instrument in 2005 and a utility application in 2006.

In 2004, Dr. Rasmussen started working with Wright Medical (Wright), an orthopedic company interested in adding Dr. Rasmussen's Zen Instrument to its replacement knee system. In 2006, Dr. Rasmussen entered into a formal agreement with Wright (hereinafter the 2006 Agreement) in which he assigned his intellectual property rights in the Zen Instrument to Wright. *See* J.A. 19136–49. Relevant portions of the agreement are reproduced below:

> 1.3 <u>Inventions</u>. "Inventions" shall mean improvements, modifications, enhancements, and later variations made solely by [Dr. Rasmussen] or jointly with others, including employees or agents

---

[2]    This case involves both Dr. Rasmussen, an orthopedic surgeon, and Rasmussen Instruments, LLC, a company Dr. Rasmussen started in his name, of which he is the only employee. J.A. 7. This opinion refers to Dr. Rasmussen as Dr. Rasmussen and to Rasmussen Instruments, LLC as Rasmussen.

of Wright which are related to the Product/Royalty Product/Licensed Product and which may be embodied in or related to the Product/Royalty Product/Licensed Product or later modifications thereof, whether patentable or not.

1.4 <u>Know-How</u>. "Know-How" shall mean all information, data, materials, and other information concerning or relating to the Product/Royalty Product/Licensed Product, including, but not limited to, all technology, including implants, instruments, surgical techniques, formulas, designs, data, processes, prototypes, or specifications developed prior to or during the term of this Agreement by [Dr. Rasmussen] and relating to the Product/Royalty Product/Licensed Product.

J.A. 19136.

3.1 <u>Disclosure of Know-How</u>. [Dr. Rasmussen] agrees to make available to Wright all Know-How related to the Product and Licensed Product and to cooperate with Wright in the further development of the Product, Royalty Product and Licensed Product. Furthermore, [Dr. Rasmussen] agrees that [Dr. Rasmussen] shall promptly disclose to Wright all future Know-How and Inventions received or developed by [Dr. Rasmussen] relating to the Product, Royalty Product and Licensed Product.

3.2 <u>Ownership</u>. The Parties acknowledge that Wright shall be the sole owner of the Product, Royalty Product and Licensed Product, including those particular ideas contributed by [Dr. Rasmussen] which are utilized in the Product, Royalty Product and Licensed Product, and that Wright shall have the obligation and right within its sole business judgment to seek any patent or other proprietary rights protection for the Product, Royalty Product and Licensed Product as it may deem necessary or

> desirable. [Dr. Rasmussen] hereby assigns to Wright all of [Dr. Rasmussen's] right, title, and interest in the Know-How and Inventions, all documentation relating thereto and all patent, trademark, trade secret, copyright, and other intellectual property rights relating thereto. . . .

J.A. 19137–38. Exhibit D of the 2006 Agreement lists the "ADVANCE® Intra-Operative Knee Tensioner" as the sole "Licensed Product." J.A. 19148. Dr. Rasmussen testified that the "ADVANCE® Intra-Operative Knee Tensioner" is the Zen Instrument. J.A. 13558–59.

In 2013, Dr. Rasmussen and Wright executed two agreements to end their business relationship, a Settlement Agreement and a Licensing Agreement. J.A. 19150–71. The Settlement Agreement purported to amend the 2006 Agreement; most significantly, the Settlement Agreement removed recitations in the 2006 Agreement of the "Licensed Product" from all the sections reproduced above. J.A. 19155–56. Further, the Settlement Agreement "deleted in its entirety" Exhibit D from the 2006 Agreement and replaced it with the term "***RESERVED***." J.A. 19159. While the 2006 Agreement as amended by the 2013 Settlement Agreement retained language that assigned intellectual property rights related to the Product and Royalty Product from Dr. Rasmussen to Wright, *see* J.A. 19156, there was no language in any of the agreements stating that Wright was conveying any intellectual property rights to Dr. Rasmussen. The License Agreement does not include any language concerning patent assignment. *See* J.A. 19165–71.

Dr. Rasmussen later entered into discussions with DePuy, and DePuy considered adding the Zen Instrument to its instrument line. DePuy offered to license the Zen Instrument; Dr. Rasmussen declined. In 2018, Dr. Rasmussen and DePuy met again, and Dr. Rasmussen disclosed his ideas for improvements to DePuy, but no joint venture

between DePuy and Dr. Rasmussen resulted. Two years later, in 2020, Dr. Rasmussen formed Rasmussen Instruments, LLC and purported to assign the Asserted Patents to the LLC. Rasmussen asserted both patents against DePuy in October 2020.

The case proceeded to a fourteen-day jury trial between February and March 2022. The court denied, without explanation, DePuy's opposed request that the verdict form include a question on whether Rasmussen had proven ownership of the patents-in-suit. The jury returned a verdict finding that DePuy willfully infringed the '180 patent, DePuy did not infringe the '583 patent, and that neither patent was invalid. The jury awarded Rasmussen $20 million in damages. J.A. 1, 189. After trial, DePuy renewed its JMOL motion, arguing Rasmussen had not proven ownership of the patents-in-suit, direct infringement of the '180 patent, or indirect infringement of the '180 patent.[3] J.A. 15501–33. The district court denied this motion. J.A. 8. Rasmussen then moved for an award of enhanced treble damages, attorneys' fees, a prejudgment interest, and a permanent injunction with respect to the accused DePuy product that the jury had found infringed the '180 patent. J.A. 1. The court denied the motion as to enhanced damages and fees but granted it as to prejudgment interest and a permanent injunction. J.A. 8.

The district court granted Rasmussen's motion for a permanent injunction on March 30, 2023, and entered final

---

[3]    DePuy also moved for a new trial, J.A. 15590–622; we do not address this motion because it is unnecessary to resolve the appeal. *See Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1349 (Fed. Cir. 2008) ("In view of our disposition of the case [reversing the district court's denial of JMOL] we need not reach the issues of obviousness or inequitable conduct nor consider defendant's alternative request for a new trial.").

judgment on the jury's verdict on September 8, 2023. The subsequent appeals, noticed on April 28, 2023, and September 12, 2023, respectively, were timely. *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4. We have jurisdiction to review under 28 U.S.C. § 1295(a)(1).

## II

Standing is a constitutional requirement under Article III of the Constitution and presents a threshold jurisdictional issue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In general, we "review de novo the district court's decisions regarding standing to sue." *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1358 (Fed. Cir. 2010). "[T]o the extent [any] jurisdictional facts are in dispute, however, the findings of fact are reviewed for clear error." *Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1330–31 (Fed. Cir. 2008) (internal citations omitted).

## III

A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit. *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993); *see also Minneapolis & St. Louis R.R. Co. v. Peoria & Perkin Union Ry. Co.*, 270 U.S. 580, 586 (1926) ("The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought."). Thus, the first issue we must resolve is whether Rasmussen owned the Asserted Patents at the time it filed suit; if not, it would not have had standing to bring the infringement action.

When the plaintiff is not the original patentee, a "critical determination" is whether the plaintiff holds a valid assignment. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019). A valid assignment must (1) be made "by an instrument in writing," 35 U.S.C. § 261, and (2) transfer the entire exclusive patent right, an undivided interest in the patent rights, or

the entire exclusive right within any geographical region of the United States. *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 (Fed. Cir. 2016). "The assignment of a patent's legal title is interpreted in accordance with contract statutes and common law in the state where the assignment took place." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020). Under either Utah or Tennessee law,[4] "[i]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1145 (Utah 2002) (citation omitted); *see Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). "Whether an ambiguity exists in a contract is a question of law." *WebBank*, 54 P.3d at 1145 (citation omitted); *see Planters Gin*, 78 S.W.3d at 890. Only after it is determined that ambiguity exists does the intent of the parties become a question of fact that allows for the consideration of extrinsic evidence. *WebBank*, 54 P.3d at 1145; *Planters Gin*, 78 S.W.3d at 890. DePuy contends that whether a plaintiff is a patentee under 35 U.S.C. § 100(d) who may sue for infringement is likewise a question of law, reviewed de novo. *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376–77 (Fed. Cir. 2000). Rasmussen claims DePuy should be estopped from seeking de novo review because it insisted that ownership be resolved by the jury, disputing Rasmussen's position that ownership was an issue for the court.

---

[4]     The 2006 Agreement recites Tennessee Law as the governing law of the contract. J.A. 19142. The 2013 Settlement Agreement amends the governing law of the contract to be Utah Law. J.A. 19158. Because the law of both states raised by the parties are substantively the same, we need not decide the issue of which state's law applies. *See* Cross-Appellant's Opening and Response Br. 30 n.4.

However, Rasmussen cites to its own contention that ownership is a factual issue and omits DePuy's assertion during trial that "[o]wnership is a question of law if it's on undisputed facts." J.A. 14440. DePuy has consistently taken the position that inventorship is a question of law, but that the underlying facts in determining ownership should be determined by a jury. De novo review of the issue of ownership of the Asserted Patents is proper.

It is undisputed that Dr. Rasmussen attempted to convey his rights in the Asserted Patents to Rasmussen Instruments in 2020. However, for that transfer to have had any effect, Dr. Rasmussen must have owned the patents at that time. *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 (Fed. Cir. 2010) ("[T]he . . . IP Assignment Agreement attempted to assign rights to existing patents, but was ineffective, because the assignor, AZ–UK, did not own the patents at the time.").

Dr. Rasmussen transferred ownership of both patents to Wright in 2006, via a present-tense, "hereby assigns" instrument. J.A. 19138, § 3.2. The assignment was therefore immediate, automatic, and self-executing. *See, e.g., Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000) (holding present-tense assignment language "hereby conveys, transfers and assigns" meant the assignee automatically obtained title to the patent with no further act required). Section 3.2 of the 2006 Agreement, reproduced above, provided that Wright became the "sole owner" of the "Licensed Product," and that Dr. Rasmussen "hereby assigns to Wright all of [Rasmussen's] right, title, and interest in the Know-How and Inventions . . . and all patent . . . and other intellectual property rights relating thereto." J.A. 19138. The "Licensed Product" is defined in the agreement as the "ADVANCE® Intra-Operative Knee Tensioner," J.A. 19137, § 1.7.2; J.A. 19148, and Dr. Rasmussen testified that this was the formal name for his Zen Instrument. J.A. 13558–59; *see also* J.A. 19138, § 3.3. Dr. Rasmussen also assigned any after-acquired patents

on this technology to Wright. J.A. 19136, § 1.3 (defining assigned "Inventions" as including "improvements, modifications, enhancements, and later variations . . . embodied in or related to the . . . Licensed Product or later modifications thereof, whether patentable or not"), § 1.4 (defining "Know-How" as including "all information, data, materials, and other information concerning or relating to the Product/Royalty Product/Licensed Product, including, but not limited to, all technology, including implants, instruments, surgical techniques . . . developed prior to or during the term of this Agreement by Consultant").

Rasmussen alleged that it became a patentee by assignment from Dr. Rasmussen just before this suit was filed. DePuy challenged that contention. It was Rasmussen's burden to establish that it was a "patentee"—an essential prerequisite to have standing to bring its claim. *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). Rasmussen never argued to the district court that Wright ever explicitly assigned Dr. Rasmussen's IP back to him; Rasmussen instead argued only that when Wright and Rasmussen unwound their business relationship in 2013, a "*nunc pro tunc*"[5] "restate[ment] and recast[ing of] the parties['] rights and obligations, retroactive to the effective date of the 2006 Wright Agreement." J.A. 13025–26. The two agreements between Rasmussen and Wright made as part of this unwinding were the prior discussed Settlement Agreement, J.A. 19150–64, and License Agreement, J.A. 19165–71. Neither agreement contained any assignment of any patent rights back to Rasmussen; the Settlement Agreement made amendments to the 2006

---

[5] The phrase "*nunc pro tunc*" means "[h]aving retroactive legal effect." *Diamond Coating Techs.*, 823 F.3d at 621 n.6 (alteration in original) (quoting *Nunc Pro Tunc,* Black's Law Dictionary (10th ed. 2014)).

Agreement but included specific assignments only from Rasmussen to Wright. J.A. 19156, § 3.2.

On appeal, Rasmussen argues that Section 3.2 of the 2006 Agreement does not assign "intangible intellectual property;" and that the assignment provision was not self-executing. Cross-Appellant's Opening and Response Br. 29–35. We disagree. The 2006 Agreement's language recites that Dr. Rasmussen "hereby assigns to Wright all of [his] right, title, and interest in the Know-How and Inventions, all documentation relating thereto and all patent, trademark, trade secret, copyright, and other intellectual property rights relating thereto," which is self-executing at the moment the language becomes effective; here, it went into effect at the time the contract was signed. J.A. 19138, § 3.2; *see Bd. of Trs. of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009) (holding that "language of 'do hereby assign' effected a present assignment"), *aff'd*, 563 U.S. 776 (2011); *Speedplay*, 211 F.3d at 1253 (holding assignee "automatically obtained title" to patent via assignment language that recited "hereby conveys, transfers and assigns"). Exhibit D of the 2006 Agreement lists the "ADVANCE® Intra-Operative Knee Tensioner" as the sole "Licensed Product[]." J.A. 19148. Dr. Rasmussen testified that the "Advanced Intra-Operative Knee Tensioner" is the Zen Instrument. J.A. 13558–60. Thus, no further action was needed to convey the patent rights at issue in this case to Wright.

Rasmussen further argues that "Dr. Rasmussen has many patents relating to the Zen Instruments beyond the Asserted Patents" such that Section 3.2 should not be read to convey "*all* his patents covering the Zen [I]nstruments," and that the agreement captures only "*future* inventions," "information *about* products" but not the "products," and does not capture "intellectual property pre-dating, or developed during, the Agreement term." Cross-Appellant's Opening and Response Br. 30–32. DePuy argues "[t]hose claims cannot be squared with the language of the 2006

Agreement. It would be bizarre for Wright to have agreed to monetize Rasmussen's invention while simultaneously allowing Rasmussen to retain exclusionary rights over the very devices Wright was to commercialize." Appellant's Reply Br. 6. We agree with DePuy.

Rasmussen's argument that the patent application that gave rise to the asserted patent is not mentioned in the contract is unavailing. Cross-Appellant's Opening and Response Br. 31–32. The sole case Rasmussen cites stands for the proposition that express assignment of the parent patent did not assign the child by silent implication. *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, 561 F.3d 1340, 1344 (Fed. Cir. 2009). No such issue is implicated in the present case. Instead, we have found "broad language," like that used in the 2006 Agreement, "more than sufficient to" assign the disputed "inventions and *all* related patents and applications." *Regents of the Univ. of N.M. v. Knight*, 321 F.3d 1111, 1120 (Fed. Cir. 2003).

Moreover, our caselaw does not support the proposition that assignments of patent ownership can simply be revoked without a formal re-assignment of the patent back to the original owner. At most, we have held that patent "assignment may be declared null and void by operation of law—either through a forfeiture provision present in the agreement or under a provision of applicable state law"— but not by merely claiming to retroactively amend the contract effectuating the assignment. *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997). And to the extent Rasmussen invokes the Tennessee or Utah Uniform Contract Code provisions in support of its arguments relying on the course of dealing between Dr. Rasmussen and Wright, those arguments are unavailing. First, the codes provide that unambiguous contract terms prevail over course of dealing, Tenn. Code Ann. § 47-1-303(e)(1); Utah Code Ann. § 70A-1a-303(5)(a). Second, Rasmussen does not cite any provision of state law that

provides that *nunc pro tunc* applies to revoke patent assignments.

There is no indication that the Asserted Patents were ever assigned back to Dr. Rasmussen by Wright; thus, Dr. Rasmussen had no rights in the Asserted Patents to convey to Rasmussen in 2020. Accordingly, we hold that Rasmussen lacked standing to bring its infringement suit because it did not own the Asserted Patents at the time that it filed its action, and the district court erred in exercising its jurisdiction over this case.

## IV

We have considered the parties' remaining arguments and find them unpersuasive. Because we conclude that Rasmussen does not own the patents that it asserted in the appealed infringement action, we vacate the district court's final judgment and remand for the district court to dismiss this action for lack of subject matter jurisdiction.

**VACATED AND REMANDED**

COSTS

No costs.